No. 81-252

IN THE SUPREME COURT OF THE STATE OF MONTANA

1981

_____

IN THE MATTER OF C.M.

_____

Appeal from: District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone.
Honorable Robert Wilson, Judge presiding.

Counsel of Record:

For Appellant:

Terry L. Seiffert, Billings, Montana

For Respondent:

Harold F. Hanser, County Attorney, Billings, Montana

_____

Submitted on briefs: August 11, 1981

Decided:    OCT 2 9 1981

Filed:    OCT 29 1981

_Thomas J. Kearney_
_____
                          Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

C. M. was involuntarily committed to Warm Springs State Hospital after proceedings in the District Court of the Thirteenth Judicial District, Yellowstone County. She appeals from the order of commitment. We affirm.

On March 21, 1981, C. M. was placed in the psychiatric section of Billings Deaconess Hospital in Billings, Montana. On March 23, C. M.'s mother asked the Yellowstone County Attorney to file a petition alleging C. M. to be seriously mentally ill and requesting that C. M. be committed for a period of up to three months. The petition was filed and a hearing was held on March 30. On April 1, the district judge issued his order committing C. M. to the State Hospital for the statutory 90-day period. Section 53-21-127(2)(a)(i), MCA. She appeals from that order and raises the following issues:

(1) Was there sufficient evidence to support the conclusion that C. M. was "seriously mentally ill," and

(2) Was there sufficient evidence to show that Warm Springs State Hospital was the least restrictive form of commitment?

Three persons testified at the commitment hearing--C. M.'s mother, Dr. William Hague and C. M. The mother testified that C. M. had been living with her for about one month prior to the hearing. She stated that C. M. had been behaving in a paranoid and confused manner. C. M.'s mother said that C. M. was obsessed with cleaning, had shaved her head, changed clothes five or six times daily, was outdoors in March without shoes or a blouse, and had broken down the door to the family residence. The mother also testified that C. M. had threatened C. M.'s 9-year old son and on one occasion had left a number of kitchen knives lying about the house. Dr. Hague is a psychiatrist who had been involved in the treatment of C. M. over a period of two years. He had also examined C. M. during her then present stay in

Billings Deaconess Hospital. Dr. Hague diagnosed C. M. as schizophrenic. He testified that C. M.'s mother had told him that C. M. had threatened her son with bodily harm and had a history of abusing the boy. Dr. Hague also related that the mother felt that the incident with the knives suggested that C. M. might be thinking of harming herself or others. Dr. Hague testified that, based upon the mother's observations and his own examination, it was his opinion that C. M. was seriously mentally ill. He believed that her illness was interrupting her cognitive processes, was causing delusional thinking, and was thereby interfering in a severe way with her functioning. Dr. Hague felt that it would be very difficult for C. M. to care for herself. It had been his experience with C. M. that she did not follow through with out-patient programs. Dr. Hague testified that C. M. needed a lengthy period of hospitalization which could not be accomplished in Billings. It was Dr. Hague's recommendation that C. M. be treated at Warm Springs State Hospital. In her testimony, C. M. either generally denied the allegations of her mother or explained the conduct in question.

Before a person may be committed to the State Hospital under section 53-21-127, MCA, the person must be adjudged "seriously mentally ill." "'Seriously mentally ill' means suffering from a mental disorder which has resulted in self-inflicted injury or injury to others or the imminent threat thereof or which has deprived the person afflicted of the ability to protect his life or health." Section 53-21-102(14), MCA. "Imminent threat of self-inflicted injury or injury to others shall be evidenced by overt acts, sufficiently recent in time as to be material and relevant as to the respondent's present condition." Section 53-21-126(2), MCA. C. M. argues that Dr. Hague had no personal knowledge of the incidents which allegedly constituted evidence of an imminent threat of self-inflicted injury or injury to others, and therefore the court could not

- 3 -

properly find the existence of such a threat. However, a professional person may opine that the respondent is seriously mentally ill even though the evidence of an imminent threat of injury is obtained from a source other than the professional person. Section 53-21-126(4), MCA.

C. M. also contends that there was a failure to show any "overt acts" which evidenced an imminent threat of injury. We disagree. C. M. threatened her son and a threat can be an overt act which, in itself, evidences an imminent threat of injury to another. Matter of Goedert (1979), 180 Mont. 484, 591 P.2d 222, 36 St.Rep. 393. An overt act can also be evidenced by a present indication of probable physical injury which is likely to occur at any moment or in the immediate future. Matter of F. B. (1980), ____Mont.____, 615 P.2d 867, 37 St.Rep. 1442. The inciddnt with the knives, the other facts presented, and the doctor's diagnosis of C. M.'s condition were, when taken together, sufficient to show a probability of physical injury in the immediate future. We also note that a determination of serious mental illness can be made if the person's mental disorder has deprived the person of the ability to protect her or his health. Dr. Hague testified that C. M.'s illness was interrupting her cognitive processes, was causing delusional thinking, and was thereby interfering in a severe way with her functioning. The doctor believed that it would be very difficult for C. M. to care for herself. Even absent a finding of an imminent threat of injury, a finding of serious mental illness could have properly been made because C. M. had been deprived of the ability to protect her health. Section 53-21-102(14).

The District Court committed no error by reaching the conclusion that C. M. was seriously mentally ill.

Finally, C. M. asks us to decide whether there was sufficient evidence to support the finding that Warm Springs State Hospital was the least restrictive form of commitment. The pur-

- 4 -

poses of Montana's laws for treatment of the seriously mentally ill are to be accomplished "in an institutionalized setting only when less restrictive alternatives are unavailable or inadequate and only when a person is so mentally ill as to require institutionalized care." Section 53-21-101(3), MCA. See also section 53-21-120, MCA. The District Court is given four dispositional options after a determination of serious mental illness is made:

"(i) commit the respondent to a facility for a period of not more than 3 months;

"(ii) order the respondent to be placed in the care and custody of his relative or guardian or some other appropriate place other than an institution;

"(iii) order outpatient therapy; or

"(iv) make some other appropriate order for treatment."

Section 53-21-127(2)(a), MCA.

Dr. Hague had been involved in the treatment of C. M. for two years. He had found that she did not follow through with outpatient programs. It was his opinion that the hospital in Billings would not be able to provide the treatment that C. M. needed. Dr. Hague testified that because of the nature of her illness, C. M. should be treated at Warm Springs State Hospital. C. M. did not present an expert in behalf of her position that she be treated on an outpatient basis. The evidence supported the District Court's decision to commit C. M. to Warm Springs State Hospital.

The order of the District Court is affirmed.

_____
Justice

We concur:

_____

- 5 -

_John Conway Harrison_

_Daniel J. Shea_

_John C. Sheehy_

Justices