No.  90-197

IN THE SUPREME COURT OF THE STATE OF MONTANA

1990

IN THE MATTER OF G.P.,

     Respondent and Appellant.

APPEAL FROM:  District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable Maurice R. Colberg, Jr., Judge
presiding.

COUNSEL OF RECORD:

     For Appellant:

     Terry L. Seiffert, Billings, Montana

     For Respondent:

     Dale Mrkich, Deputy Yellowstone County Attorney,
Billings, Montana
Marc Racicot, Attorney General; Patti Powell, Asst.
Atty. General; Helena, Montana

Submitted on Briefs:  August 16, 1990

Decided:  September 27, 1990

Clerk

FILED

'90 SEP 27 AM 11 57

ED SMITH, CLERK
MONTANA SUPREME COURT

Filed

Justice R. C. McDonough delivered the Opinion of the Court.

The Respondent G. P. appeals the order of the Montana Thirteenth Judicial District, Yellowstone County, committing him to the Montana State Hospital for a period of 90 days on the grounds that he is seriously mentally ill according to § 53-21-102(15), MCA. We affirm.

G. P. raises a sole issue on appeal: Did the District Court err in committing him as being seriously mentally ill under § 53-21-102(15) rather than mentally ill under § 53-21-102(8) MCA?

The parents of G. P., age 37, filed a request for G. P.'s commitment with the Yellowstone County Attorney's office on February 7, 1990. The request described various conduct of G. P. that his parents believed indicated the need for commitment: G. P. slept most of the time; ate very little; tore at his clothing; stood outside and stared into space; doubled up as if in pain; tore up his own apartment on one occasion; had not come to his parents house to pick up his sole source of income, his SSI check; and he refused to take his medication prescribed for him during prior hospitalizations. G. P.'s parents alleged that G. P. was unable to take care of himself because G.P. was seriously mentally ill. A notation was made on the request for commitment by a worker of the Billings Mental Health Center, stating that since his recent hospitalization G. P. failed to follow any of the recommendations of those assigned to his case and that this led the worker to believe that G.P.'s illness had become worse.

The following day the County Attorney initiated a petition for

2

commitment. At this time G. P. was not being detained. On the date G.P. was to make his initial appearance he allegedly refused to enter the courtroom. The court found probable cause to detain G. P. for his own safety and ordered G. P. to be detained and evaluated by a certified mental health professional.

On February 14, 1990 G. P. was evaluated by Roshadi Azzam, a psychiatrist at Deaconess Hospital. Dr. Azzam testified at the commitment hearing the following day. Largely based on Dr. Azzam's findings, which were incorporated into the findings of the court, the District Court concluded that G. P. "is beyond a reasonable doubt seriously mentally ill as defined in Section 53-21-102 MCA" and ordered that G. P. be committed to the Montana State Hospital at Warm Springs for a period of treatment and evaluation not to exceed three months, unless extended as provided for by § 53-21-128, MCA (1983). The court's order allowed for treatment by injection of medication if deemed necessary by the attending physician. G. P. now appeals the commitment order.

The standard of proof for a commitment hearing is set forth in § 53-21-126(2), MCA:

> The standard of proof in any hearing held pursuant to this section is proof beyond a reasonable doubt with respect to any physical facts or evidence and clear and convincing evidence as to all other matters, except that mental disorders shall be evidenced to a reasonable medical certainty. Imminent threat of self-inflicted injury or injury to others shall be evidenced by overt acts, sufficiently recent in time as to be material and relevant as to the respondent's present condition.

Thus, the above standard of proof required in involuntary commitment proceedings is bifurcated: (1) with respect to physical

3

facts or evidence, there must be proof beyond a reasonable doubt; and (2) as to all other matters, including the existence of a mental disorder, there must be clear and convincing evidence. Section 53-21-126(2), MCA; In the Matter of R.T. (1983), 204 Mont. 493, 495, 665 P.2d 789, 790; citing In the Matter of N.B. (1980), 190 Mont. 319, 323-324, 620 P.2d 1228, 1231, construing Section 53-21-126(2), MCA, in light of the constitutional requirements of Addington v. Texas (1979), 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323. Under this bifurcated standard, proof of mental disorders to a reasonable degree of medical certainty is sufficient if, considered with all the other evidence in the case, the trier of fact is led to the conclusion that the mental disorder exists by clear and convincing proof. N. B., 620 P.2d at 1231.

G. P. contends that the State failed to meet its burden of clear and convincing proof that he is seriously mentally ill. The definition of "seriously mentally ill" is found at §53-21-102(15), MCA:

> "Seriously mentally ill" means suffering from a mental disorder which has resulted in self-inflicted injury or injury to others or the imminent threat thereof _or_ which has deprived the person afflicted of the ability to protect his life or health. For this purpose, injury means physical injury. . . . (Emphasis added.)

As quoted earlier, the statutes also require that "[i]mminent threat of self-inflicted injury or injury to others shall be evidenced by overt acts, sufficiently recent in time as to be material and relevant as to the respondent's present condition." Section 53-21-126(2), MCA.

G. P. contends that the District Court erred in finding him

4

"seriously mentally ill" under this definition because of a lack of evidence of overt acts. G.P. alleges that in Dr. Azzam's report, the doctor incorrectly restated what he had heard from an emergency room physician, that "[a]pparently, Mr. . . . [G. P.] was in a court hearing when he became uncontrollably violent and threatening to the members of the court and therefore he was restrained. . . ." G. P. points out that this statement is false because he never appeared in court. G. P. then argues that because this is the only evidence of an overt act, the court erred in finding him "seriously mentally ill;" and at the very most the court could have found him to be "mentally ill" as provided in § 53-21-102(8), MCA.

We disagree. Evidence of overt acts is only necessary to prove serious mental illness based on "self-inflicted injury or injury to others or the imminent threat thereof." Sections 53-21-102(15) and 53-21-126(2), MCA. However, it is not necessary to present evidence of overt acts to prove serious mental illness based on a respondent "suffering from a mental disorder . . . which has deprived the person afflicted of the ability to protect his life or health." Section 53-21-102(15), MCA; Matter of C. M. (1981), 195 Mont. 171, 173-174, 635 P.2d 273, 274-275.

Here, there is clear and convincing evidence that G. P.'s illness deprives him of the ability to protect his own life and health. Dr. Azzam diagnosed G. P. as a severe chronic paranoid schizophrenic who without medication develops auditory hallucinations that direct him to do things he cannot control, thus

5

posing a danger to himself and others. Dr. Azzam concluded that long term treatment in the state hospital with medication was appropriate. G. P. flatly refuses to take his medication, insisting, "I don't need any medication." His roommate also testified that G. P. refuses to take and denies that he needs medication. The testimony of his parents indicates that prior to the hearing he refused to take his medication, slept most of the day, ate very little, and often stood outside his trailer staring vacantly at nothing. He continually failed to pick up his social security check, which was his sole source of income. We recognize that "[i]t is one thing to commit an individual who cannot function sufficiently to supply basic survival needs, and another to commit an individual who merely 'chooses to live under conditions that most of society would conclude to be substandard . . . .'" R. T. 665 P.2d at 791. But here the evidence indicates that G. P.'s illness was interrupting his cognitive processes, was causing delusional thinking, and was thereby interfering in a sever way with his functioning. C. M., 635 P.2d at 274-275. Under these circumstances, the evidence is clear and convincing that G.P.'s mental disorder renders him unable to protect his own life or health. See C. M., supra. The order of the District Court is affirmed.

We Concur:

_____
Chief Justice

_____
Justice

Diane G. Barr

William E Hunt

Justices