No. 14560

IN THE SUPREME COURT OF THE STATE OF MONTANA

1979

---

IN THE MATTER OF THE MENTAL
HEALTH OF RICHARD W. GOEDERT,

Appellant.

---

Appeal from: District Court of the Fifteenth Judicial District,
Honorable L. C. Gulbrandson, Judge presiding.

Counsel of Record:

For Appellant:

McCarvel and Maltese, Glasgow, Montana
Terry L. Seiffert argued, Billings, Montana

For Respondent:

Hon. Mike Greely, Attorney General, Helena, Montana
Mary B. Troland argued, Assistant Attorney General,
Helena, Montana
James McCann County Attorney, Wolf Point, Montana

---

Submitted: February 5, 1979

Decided: MAR 1 1979

Filed: MAR 1 1979

Thomas J. Kearney
Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

Following a combined adjudicatory and dispositional hearing on appellant's mental health on September 28, 1978, in the District Court of the Fifteenth Judicial District, Roosevelt County, the Honorable L. C. Gulbrandson found appellant to be seriously mentally ill as defined in section 38-1302(14), R.C.M. 1947, now section 53-21-102(14) MCA. A order of confinement was entered on October 12, 1978, and appellant appeals.

On September 15, 1978, appellant threatened to kill Ione Hughes when the two met in a bar in Poplar, Montana. Appellant left the bar after this incident but returned in a short time and continued to threaten Mrs. Hughes. Appellant was arrested and a petition for commitment was filed against him.

Testimony adduced on September 28, 1978, and in related depositions revealed that appellant has spent a substantial portion of the last twenty years in institutions. Medical testimony from two psychologists indicated that appellant suffers from paranoid schizophrenia. Both psychologists indicated that appellant should be placed in a secured and structured environment, at least temporarily, until his mental condition stabilizes. Various witnesses, including District Judge M. James Sorte, testified as to appellant's past violent behavior and as to their consequent fear of him.

With respect to the incident of September 15, testimony revealed that appellant had in the past accused Mrs. Hughes of playing some part in the killing of his brother Gene in 1973. After his arrest on the 15th, appellant repeated the

threats against Mrs. Hughes to the arresting officer. Appellant himself stated at the hearing that the best way to "break even" or get rid of the people who bothered him was to kill them.

Based upon the evidence presented Judge Gulbrandson found appellant to be seriously mentally ill. He found that the Warm Springs State Hospital was the least restrictive available facility for providing necessary treatment and issued an appropriate order of commitment.

Appellant presents two issues for review:

1. Whether there was sufficient evidence to support the District Court's finding that appellant was seriously mentally ill within the meaning of section 38-1302(14), R.C.M. 1947, now section 53-21-102(14) MCA?

2. Whether the District Court erred in committing appellant to Warm Springs State Hospital as opposed to a less restrictive facility for treatment of his serious mental illness?

Section 38-1302(14), R.C.M. 1947, now section 53-21-102(14) MCA, defines the phrase "seriously mentally ill":

> "'Seriously mentally ill' means suffering from a mental disorder which has resulted in self-inflicted injury or injury to others or the imminent threat thereof or which has deprived the person afflicted of the ability to protect his life or health. No person may be involuntarily committed to a mental health facility or detained for evaluation and treatment because he is an epileptic, mentally deficient, mentally retarded, senile, or suffering from a mental disorder unless the condition causes him to be seriously mentally ill within the meaning of this chapter."

According to this definition and the facts of the instant case, appellant must suffer from a mental disorder which has resulted in the imminent threat of self-inflicted injury or injury to others in order to be adjudged "seri-

-3-

ously mentally ill". Section 38-1305(7), R.C.M. 1947, now section 53-21-126(2) MCA, provides in pertinent part that "imminent threat of self-inflicted injury or injury to others shall be evidenced by overt acts, sufficiently recent in time as to be material and relevant as to the respondent's present condition."

The pivotal question, then, with respect to appellant's first issue, is whether appellant's actions amounted to the "overt act" required by statute. Appellant argues that his actions over the past twenty years have developed into a pattern; he raves and threatens but he has not followed up his words with action. Federal courts have discussed this requirement of an overt act in some detail. In Lessard v. Schmidt (E.D. Wis. 1972), 349 F.Supp. 1078, 1093, vacated and remanded on other grounds, (1974), 414 U.S. 473, 94 S.Ct. 713, 38 L Ed 2d 661, the Court stated:

> "Although attempts to predict future conduct are always difficult, and confinement based upon such a prediction must always be viewed with suspicion, we believe civil confinement can be justified in some cases if the proper burden of proof is satisfied and dangerousness is based upon a finding of a recent overt act, attempt or threat to do substantial harm to oneself or another." (Emphasis added.)

In another case, Lynch v. Baxley (D. Ala. 1974), 386 F.Supp. 378, 391, the court stated:

> "A finding of dangerousness indicates the likelihood that the person to be committed will inflict serious harm on himself or on others. In the case of dangerousness to others, this threat of harm comprehends the positive infliction of injury -- ordinarily physical injury, but possibly emotional injury as well." (Emphasis added.)

While not every threat can be considered an overt act, the testimony and circumstances of this case indicate that appellant's threats fulfilled the statutory requirement of

-4-

an overt act. A threat to kill is a verbal act that falls within the definition of an "overt Act" as set forth in the statute.

Turning to appellant's second issue, section 38-1306(1)(c), R.C.M. 1947, now section 53-21-127(2) MCA, states that, in determining the treatment to be provided to a seriously mentally ill person:

> ". . .the court shall choose the least restrictive alternatives necessary to protect the respondent and the public and to permit effective treatment. The court shall consider and shall describe in its order what alternatives for treatment of the respondent are available, what alternatives were investigated, and why the investigated alternatives were not deemed suitable."

Along these lines Judge Gulbrandson stated in his findings of fact:

> "5. That respondent is a fit and proper person for commitment to Warm Springs State Hospital for a period of three (3) months for treatment of his present acute state of his serious mental illness.

> "6. That if, during the commitment to Warm Springs State Hospital, it is determined that extended treatment under detention is unnecessary and that a less restrictive alternative is warranted that will continue the protection of the respondent and the public then, in that event, the same shall be ordered.

> "7. That, in the past twenty (20) years, respondent has been released from Warm Springs State Hospital and transferred to Veterans Hospitals at Sheridan, Wyoming and at American Lake, Washington. That the Court deems this alternative unsuitable for this respondent for the reason that it is not a sufficiently secure environment to protect the public from this respondent's outrages.

> "8. That there is no mental health facility, other than a satellite office staffed by one professional person in the county of respondent's residence, to-wit: Roosevelt County.

> "9. That the professional persons who gave testimony in this matter indicate that this respondent requires an extended structured setting.

-5-

"10. These same professional persons gave testimony that there is no other alternative available to this respondent that will provide some structure or some control over this respondent, i.e.: Warm Springs State Hospital or a veterans home.

"11. The only appropriate order for treatment and extended care of this respondent that would be suitable to his chronic serious mental illness pursuant to Section 38-1306(1)(a)(iv), Revised Codes of Montana, is to confinement at Warm Springs State Hospital, until a suitable less restrictive alternative is made available that will provide respondent some measure of freedom and at the same time afford protection of the public."

These findings are based, in large measure, upon the testimony of two psychologists and one psychiatrist. We find that the District Court adequately considered the available facilities and, finding no appropriate less restrictive facility, properly committed appellant to the Warm Springs State Hospital.

Affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

-6-