No. 80-162

IN THE SUPREME COURT OF THE STATE OF MONTANA

1980

_____

IN THE MATTER OF F. B.

_____

Appeal from:  District Court of the Thirteenth Judicial District,
              In and for the County of Yellowstone,
              The Honorable Robert H. Wilson, Judge presiding.

Counsel of Record:

        For Appellant:

              Terry L. Seiffert, Billings, Montana

        For Respondent:

              Klaus P. Richter, Deputy County Attorney,

              Billings, Montana

_____

                          Submitted on Briefs:  July 9, 1980

                                   Decided:  AUG 13 1980

         AUG 13 1980
Filed:

_____
Thomas J. Kearney
                              Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

A petition for commitment was filed against appellant on March 31, 1980. A combined adjudicatory and dispositional hearing on appellant's mental health was held on April 4, 1980, before the Honorable Robert H. Wilson. Based on the evidence adduced at the hearing, appellant was found to be seriously mentally ill within the meaning of section 53-21-102, MCA. A commitment order was entered by the court on the same day. Appellant appeals from that order.

On March 28, 1980, officers of the Billings Police Department were called to investigate a disturbance at the Northern Hotel in Billings, Montana. Entrance to appellant's room was made by way of the assistant manager. The officers entered the room and observed appellant holding a baseball bat on his shoulder. The officers talked with appellant, and later, while appellant was sitting down, removed the bat. Appellant went with the officers voluntarily to the Deaconess Hospital. According to the testimony of the police, appellant did not make any overt act to the officers or threaten the officers but was verbally abusive.

Prior to the arrival of the police at the hotel, appellant testified that he had argued with the hotel management with regard to his rent and a possible overpayment of the month's rent.

Dr. Thomas Van Dyk, a psychiatrist, testified that appellant suffered from paranoid schizophrenia. He further testified that while appellant was at the hospital, he tore the sheets off the bed and threw food, although he did not personally observe these actions. The doctor also testified

that while appellant was in the hospital, he was angry and hostile.

Dr. Van Dyk testified that there had been no threats or overt acts toward him or any of his staff at the hospital by appellant. He felt, however, that there was a potential that appellant might hurt someone.

Appellant's account of the incident at the Northern Hotel was similar to that of the officers. However, appellant testified he gave the bat to the officers and he did not threaten the officers in any way. He further testified that the incident relating to the food on the floor at the hospital was due to his "messy habits."

Based on the evidence presented, Judge Wilson found appellant to be seriously mentally ill. He found Warm Springs State Hospital the least restrictive available facility for providing necessary treatment and issued an appropriate order of commitment for a period of three months.

Appellant presents the sole issue of whether there was sufficient evidence to support the District Court's finding that appellant was seriously mentally ill within the meaning of section 53-21-102, MCA.

Section 53-21-102(14), MCA, defines seriously mentally ill:

> "'Seriously mentally ill' means suffering from a mental disorder which has resulted in self-inflicted injury or injury to others or the imminent threat thereof or which has deprived the person afflicted of the ability to protect his life or health. For this purpose, injury means physical injury. No person may be involuntarily committed to a mental health facility or detained for evaluation and treatment because he is an epileptic, mentally deficient, mentally retarded, senile or suffering from a mental disorder unless the condition caused him to be seriously mentally ill within the meaning of this part."

The finding of seriously mentally ill places a twofold burden on the State to show (1) a mental disorder and, in conjunction that (2) the mental disorder has resulted in self-inflicted injury or physical injury to others or an "imminent threat thereof." The proof required for this definition is that the mental disorder be shown by reasonable medical certainty and the standard of proof required of overt acts is beyond a reasonable doubt:

> "(2) The standard of proof in any hearing held pursuant to this section is proof beyond a reasonable doubt with respect to any physical facts or evidence and clear and convincing evidence as to all other matters, except that mental disorders shall be evidenced to a reasonable medical certainty. Imminent threat of self-inflicted injury or injury to others shall by evidenced by overt acts, sufficiently recent in time as to be material and relevant as to the respondent's present condition." Section 53-21-126(2), MCA.

This Court addressed the question of what is an "imminent threat" in Matter of Goedert (1979), ___ Mont. ____, 591 P.2d 222, 36 St.Rep. 393, where the appellant was found to be seriously mentally ill. The appellant in Goedert had publicly threatened to kill a woman whom he had previously accused of involvement in the killing of his brother. He repeated the threats to a police officer after being arrested in connection with the incident. This Court found that the man's actions amounted to an "overt act" sufficient to satisfy the civil involuntary commitment provision that "imminent threat of injury to others shall be evidenced by overt acts."

In light of the difficulty of predicting that a given mental state is likely to result in future antisocial conduct, it is necessary to require the commission of some overt act. When this is coupled with psychiatric evalua-

-4-

tion, the court will then be in a better position to assess the likelihood of the individual committing similar acts.

A person can be committed to a mental health facility if he or she is found to be seriously mentally ill. Serious mental illness is a mental disorder and a showing of "an imminent threat of self-inflicted injury or injury to others . . ." Section 53-21-102(14), MCA. This imminent threat must be evidenced by an overt act. Imminent threat does not mean that a person may possibly cause an injury at some time in the distant or uncertain future. The danger must be fairly immediate. At the same time, the law does not require proof beyond a reasonable doubt that an injury will occur in the future. Threat is not certainty. The law requires only proof beyond a reasonable doubt that the threat of future injury presently exists and that the threat is imminent, that is, impending, likely to occur at any moment. If beyond a reasonable doubt there is a present indication of probable physical injury which is likely to occur at any moment or in the immediate future, and if this injury would be a result of a mental disorder, then the person suffering from such mental disorder is seriously mentally ill within the meaning of the act.

Courts have had difficulty in determining the definition of overt act. Overt act is a behavior. This behavior tends to be dangerous behavior or a manifestation of dangerousness. This behavior need not be a completed act. An attempt or threat, or even a failure to act may suffice. An individual is not committed because of his conduct or actions, but rather because of his status as a mentally ill and dangerous person. The overt act or behavior is merely evidence of this status.

The threat to kill another is a verbal overt act. It manifests the commission of a dangerous act upon oneself or another. When there is proof beyond a reasonable doubt that there is a present indication of probable physical injury likely to occur at any moment or in the immediate future, coupled with the finding within a reasonable medical certainty that the individual is suffering from a mental disorder, then involuntary civil commitment of that person is required. Such was the case in Goedert.

In the instant case we must look at all the facts presented and the record of all the testimony. This Court must ask: Whether appellant engaged in behavior that was dangerous or manifested the probable occurrence of a dangerous act; whether appellant's actions or overt acts evidenced an imminent threat of self-inflicted injury or injury to others; whether there was proof beyond a reasonable doubt that there is a present indication of probable physical injury which is likely to occur at any moment or in the immediate future; and finally, whether there was evidence within a reasonable medical certainty that appellant suffered from a mental disorder.

Appellant caused several disturbances at the Northern Hotel. He was being loud and abusive and was throwing food. Police officers arrived and knocked on his door requesting to talk to him. He refused admission of the officers. Testimony indicated that appellant yelled at the officers, and when entrance was made into the room by the assistant manager, they observed appellant with a baseball bat on his shoulder. Appellant testified he knew they were coming and, therefore, "armed" himself. It took several minutes of persuasion before appellant sat down and the bat could be taken away.

At the hospital appellant threw food on the floor, tore sheets off his bed and was disorganized. Testimony indicated appellant was hostile and angry at the hospital. Dr. Van Dyk found appellant to be paranoid schizophrenic, finding appellant was demanding, and when something was requested and was not done immediately, he became angry and threatening.

We find the State has sustained its burden and has sufficient evidence to answer the questions posed in ordering civil involuntary commitments. There was a present indication of probable physical injury likely to occur at any moment or in the immediate future. There was evidence within a reasonable medical certainty that appellant did suffer from a mental disorder. Within the standard of proof required by the statute, we find the District Court had a substantial basis for finding that appellant posed an "imminent threat of injury to others" and meets the seriously mentally ill definition.

Appellant argues that there was no evidence that he physically hurt himself or another and that this behavior cannot be regarded as dangerous or requiring commitment. Recently the Kansas Appellate Court discussed this argument. The Kansas commitment statute is similar to that of Montana and the case is applicable here. The court said:

> ". . . We do not believe the legislature envisioned that a person could be found mentally ill and subject to involuntary commitment only where there is evidence of actual violence to persons or physical harm. To construe the statute in such a manner would frustrate the obvious intention of providing treatment for certain mentally ill persons before physical harm results and would extend the personal safeguards of the statutory scheme to an illogical degree. The legislation contains no requirement of physical harm and we can certainly foresee a situation, such as that pre-

sented herein, where arguably passive behavior gives rise to an imminently dangerous condition. While each case must be decided on its facts, we conclude the evidence, when viewed in the light most favorable to petitioner, was sufficient to form the basis for a reasonable inference of dangerousness within the meaning of KSA 1977 Supp. 59-2902(1)." Matter of Gatson (1979), 3 Kan.App.2d 265, 593 P.2d 423, 427.

The order of commitment of the District Court is affirmed.

John Conway Harrison
_____
Justice

We concur:

Frank I. Haswell
_____
Chief Justice

Gen B Daly
_____

Daniel J. Shea
_____

John C. Sheehy
_____
Justices