No. 93-652

IN THE SUPREME COURT OF THE STATE OF MONTANA

1994

FILED

MAY 3 1 1994

_Smith_
CLERK OF SUPREME COURT
STATE OF MONTANA

IN RE THE MENTAL HEALTH
OF E. M.,

      Respondent and Appellant.

APPEAL FROM:   District Court of the Eleventh Judicial District,
In and for the County of Flathead,
The Honorable Ted O. Lympus, Judge presiding.

COUNSEL OF RECORD:

     For Appellant:

     Robert Allison, Kalispell, Montana

     For Respondent:

        Hon. Joseph P. Mazurek, Attorney General;
Pamela P. Collins, Assistant Attorney General,
Helena, Montana

        Thomas J. Esch, County Attorney; Valerie Wilson,
Deputy County Attorney, Kalispell, Montana

Submitted on Briefs:  April 28, 1994

Decided:  May 31, 1994

Filed:

Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

E.M. appeals from an order of the District Court for the Eleventh Judicial District, Flathead County, committing her to a mental health facility for a period of up to ninety days. We affirm.

The issue is whether a verbal statement of a threatening nature may constitute an overt act within the meaning of § 53-21-126(2), MCA.

On September 30, 1993, the Flathead County Attorney's office filed a petition for involuntary commitment of E.M. Attached to the petition was a report prepared and signed by two mental health professionals employed by the Northwest Montana Regional Community Mental Health Center.

According to the report, E.M. was a fifty-seven-year-old widow with no known relatives. Mental health professionals evaluated her after a friend of hers reported that E.M. had stated that she planned to buy a gun and then shoot a neighbor and herself. When the mental health professionals spoke with E.M. in her home, she again stated her plan to shoot her neighbor and herself. The report further stated that E.M. appeared to be suffering from a delusional disorder and to be capable of carrying out her plan. Although E.M. had no reported previous mental illness, the mental health professionals wrote that, when interviewed, she had a "paranoid delusion evidenced by ideas that neighbor is entering [her] apt. + disturbing objects + T.V. signals" and that E.M.'s insight and judgment were "grossly impaired."

The District Court held a hearing on the petition on October 5, 1993. E.M. was present and was represented by counsel and by a court-appointed friend of respondent. A mental health professional who signed the report was the sole witness.

Although E.M. does not challenge the finding that she suffers from a mental disorder, we set forth some of the evidence on that point to place the issue on appeal in context. The mental health professional diagnosed E.M. as suffering from paranoia, a delusional disorder, and possible underlying depression. She testified that E.M. told her the neighbor had been in her apartment and had cut little holes in her long johns. When the mental health professional suggested another reasonable explanation might be that the long johns were coming apart at the seams after laundering or that there was some defect in the garment, "[E.M.] got quite agitated with us. There was no other explanation . . ." The mental health professional also testified that E.M. stated her neighbor had been entering her apartment and smearing feces on her toilet and interfering with her television and radio reception with electronic devices.

The court denied a motion by E.M.'s attorney to dismiss the petition. It found that E.M. was seriously mentally ill and in need of treatment. It ordered that she be committed to Glacier View Hospital at her own expense for a period not to exceed ninety days. The court further provided for a conditional release to Lamplighter House upon E.M.'s compliance with the medical and treatment program and no further acts or threats of violence.

3

May a verbal statement of a threatening nature constitute an overt act within the meaning of § 53-21-126(2), MCA?

Montana's procedures concerning petitions for involuntary detention of a person at a mental health facility are set forth at §§ 53-21-121 through -127, MCA. Section 53-21-126(2), MCA, provides:

> The standard of proof in any hearing held pursuant to this section is proof beyond a reasonable doubt with respect to any physical facts or evidence and clear and convincing evidence as to all other matters, except that mental disorders shall be evidenced to a reasonable medical certainty. Imminent threat of self-inflicted injury or injury to others shall be evidenced by overt acts, sufficiently recent in time as to be material and relevant as to the respondent's present condition.

E.M. questions whether a verbal statement of a threatening nature is sufficient to constitute an "overt act" under the statute.

E.M.'s question has been addressed in cases previously decided by this Court. "A threat to kill is a verbal act that falls within the definition of an 'overt act' as set forth in the statute." In re Goedert (1979), 180 Mont. 484, 487, 591 P.2d 222, 224. The Court later elaborated:

> The threat to kill another is a verbal overt act. It manifests the commission of a dangerous act upon oneself or another. When there is proof beyond a reasonable doubt that there is a present indication of probable physical injury likely to occur at any moment or in the immediate future, coupled with the finding within a reasonable medical certainty that the individual is suffering from a mental disorder, then involuntary civil commitment of that person is required.

In re F.B. (1980), 189 Mont. 229, 233, 615 P.2d 867, 869-70. We have further explained our rationale as follows:

> Our citizens are entitled to protection from harm at the hands of those unfortunate persons who are victims of a

4

mental disorder. Most certainly the legislature never intended that blood of innocent people must first be shed before the statutory definition of "overt act" has been satisfied.

In re J.B. (1985), 217 Mont. 504, 510, 705 P.2d 598, 602.

E.M. argues that her case is not comparable to the above-cited cases because, in those cases, the court relied upon other behavior in addition to a single verbal threat. She asserts that there has been no showing of violent behavior by her in the past or "of even the slightest scintilla of a physical act of any sort directed against another in furtherance of this threat or, for that matter, any prior incidents."

The record demonstrates that E.M. made repeated threats to end her neighbor's life and her own life and that she may have obtained a gun. The mental health professional testified as follows about an interview with E.M. after the petition was filed:

> And then on the 30th I was present at that interview, and she clearly stated that she had made up her mind to get the gun and we could not talk her out of it. When I asked her if she had a gun already, she smiled and said, "I won't tell you that." She told me that she is a determined person. And when we offered other possibilities of settling these disputes with her neighbor, including having meetings with the two of them, bringing some of the complaints out to open discussion, she stated that, "I will do it my way." We again asked her "her way," and she said, "I will shoot him, you better believe it."

On cross-examination, the mental health professional testified that E.M. refused to answer a question as to whether she had already taken further steps to obtain a gun. The mental health professional also testified that she believed E.M.'s threats constituted a very clear danger to the neighbor and to E.M. herself.

We conclude that the District Court did not err in ruling that the State provided clear and convincing evidence of overt acts constituting an imminent threat of injury to herself and another on the part of E.M.  We hold that the court did not err in ordering E.M. involuntarily committed to a mental health facility.

Affirmed.

_____
Chief Justice

We concur:

_____

_____

_____
Justices

6

Justice William E. Hunt, Sr., dissenting.

I dissent. I recognize the difficulty these cases present and the dilemma often faced by law enforcement officers, prosecutors, and district judges, but the statute does provide that to prove imminent threat of injury requires some sort of overt act, recent enough in time to be relevant to the respondent's condition. Section 53-21-126(2), MCA. I agree with Justice Morrison's dissent in *Matter of J.P.*, 217 Mont. 504, 511, 705 P.2d 598, 603 (Morrison, J., dissenting), where he said that "courts should be vigilant in protecting the rights of those sought to be committed. The discharge of judicial responsibility includes rigorous application of the statutory mandate." As in that case, the State here has failed to prove that E.M. took any actions to demonstrate a present danger to either herself or to others. She is a 57-year-old widow who has shown no inclination toward violence, and has only made verbal threats. If we allow verbal threats alone to be sufficient to lock somebody up for 90 days, whether or not at their own expense, we have gone a long way away from our judicial responsibility.

_____
                Justice