JUSTICE COTTER
dissents.
¶23 I dissent.
¶24 In Mental Health of C.R.C., we quoted from our Opinion in In re Mental Health of E.M. (1994), 265 Mont. 211, 213, 875 P.2d 355, 356-57, saying:
we have recognized ... that commitment is required “when there is proof beyond a reasonable doubt that there is a present indication of probable physical injury likely to occur at any moment or in the immediate future, coupled with the finding ... that the individual is suffering from a mental disorder.”
C.R.C., ¶ 22 (emphasis added).
¶25 Here, the Court concludes at ¶ 18 as follows:
D.S.’s mental disorder, as demonstrated by his several overt acts of relating suicidal thoughts to anyone who would listen, resulted in an imminent threat of danger at least to himself.
Basically, what we have concluded here is that D.S.’s mental disorder exists because he has suicidal thoughts, rather than concluding that he both has a mental disorder and that there is in conjunction with the disorder an imminent threat of self-inflicted injury demonstrated by *398 overt acts.
¶26 Rue’s initial diagnosis was “delusional disorder, NOS (not otherwise specified).” However, when questioned about the diagnosis, Rue admitted that she had not been able to conduct a sufficient investigation to determine whether D.S.’s “delusions” arising out of the “meth ring conspiracy” had any basis in fact or reality. She said unequivocally that her evaluation of him was not complete, having taken place for only an hour prior to the hearing, and that she would like to have more certainty about his mental disorder. She further admitted that if his preoccupation with the drug conspiracy and his fear of the people involved in it were valid or true, then her diagnosis would be wrong. However, she then went on to opine that D.S. had a mental disorder connected with his threats of suicide. And it was this “mental disorder connected with threats of suicide” that the court relied upon in determining that D.S. should be committed.
¶27 As the Court points out, there must be a determination that the person to be committed suffers from a mental disorder beyond a reasonable medical certainty pursuant to §53-21-126(2), MCA. See ¶ 14 above. Presumably, a reasonable medical certainty that a disorder existed would encompass a medical determination of the nature of the disorder. Not so here. Rue could not specify what the disorder might be; in fact, she agreed with the District Court that, while she was not entirely certain of the name of the disorder, she was nonetheless certain that D.S. had one that required commitment. With all due respect, nothing reasonably medically certain whatsoever could be gleaned from Rue’s testimony.
¶28 Further, even if there was a determinable mental disorder here, there was a total failure of “proof beyond a reasonable doubt that there is a present indication of probable physical injury likely to occur at any moment or in the immediate future ....” C.R.C., ¶ 22. In fact, Rue admitted under cross-examination that D.S. told her he had decided against suicide. She also admitted that he expressed the belief that suicide was not a good idea or a solution to his problems. D.S. told Rue that, while he had made previous statements about suicide, the counselor who first interviewed him had taken them out of context. Further, although Rue recommended that he be given medication against his will, she had to admit that D.S. had given no indication that he was not willing to take medication nor did he evidence any unwillingness to address any psychological issues which he might have. In short, there was little proof, much less proof beyond a reasonable doubt, of any overt act that posed an imminent threat of *399 self-inflicted injury, as required by §53-21-126(2), MCA.
¶29 In Mental Health of C.R.C., we acknowledged the “calamitous effect of a commitment,” which include the loss of liberty and damage to the individual’s reputation. We observed that it is because of these dire effects that the mental health statutes must be strictly construed. C.R.C., ¶ 13. In my judgment, these statutes were not strictly construed when the court, in reliance upon uncertain medical evidence-both as to the existence of a mental disorder and the probability of imminent self-inflicted injury-committed D.S. against his will for ninety days. I therefore dissent.
JUSTICE NELSON joins in the dissent of JUSTICE COTTER.
CHIEF JUSTICE GRAY joins in the dissent of JUSTICE COTTER.