FILED

July 21 2015

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 14-0401

DA 14-0401

IN THE SUPREME COURT OF THE STATE OF MONTANA

2015 MT 203

IN THE MATTER OF:

E.A.L.,

      Respondent and Appellant.

APPEAL FROM:     District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DI-14-51
Honorable John W. Larson, Presiding Judge

COUNSEL OF RECORD:

    For Appellant:

        Wade Zolynski, Chief Appellate Defender, James Reavis, Assistant
Appellate Defender; Helena, Montana

    For Appellee:

        Timothy C. Fox, Montana Attorney General, Pamela P. Collins,
Assistant Attorney General; Helena, Montana

        Kirsten H. Pabst, Missoula County Attorney, Erica Grinde, Deputy
County Attorney; Missoula, Montana

                    Submitted on Briefs: June 17, 2015
                           Decided: July 21, 2015

Filed:

_____
                Clerk

Justice Michael E Wheat delivered the Opinion of the Court.

¶1 E.A.L. appeals from the order of the Montana Fourth Judicial District Court, Missoula County, committing him to the Montana State Hospital. We affirm.

## ISSUES

¶2 We review the following issues:

*1. Was the District Court's finding that E.A.L. posed an imminent threat of harm to himself or others clearly erroneous?*

*2. Did the District Court err by basing findings of fact on statements made in the State's petition for commitment?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 E.A.L. has been diagnosed with schizophrenia and antisocial personality traits. By May 2014, he had been admitted to inpatient treatment for his mental illness on three separate occasions. On May 29, 2014, following allegations by E.A.L.'s mother that E.A.L. had not been taking his medications and that E.A.L. had threatened violent behavior, E.A.L. was evaluated by a mental health professional in Libby, Montana. The professional opined that E.A.L. posed an imminent risk of danger to himself and others, and the professional recommended detention at the St. Patrick Hospital Neurobehavioral Unit. A petition for commitment setting forth the preceding facts was filed on May 30, 2014. On the same day, the District Court determined that probable cause existed to support the allegations, and it ordered detention and evaluation of E.A.L.

¶4 On June 4, 2014, the District Court held a hearing on the petition for commitment. E.A.L. was present and represented by counsel at the hearing. The only evidence

presented at the hearing was testimony from E.A.L. and testimony from G. Walker Smith, a licensed clinical professional counselor. Smith testified that he had evaluated E.A.L. on June 4, 2014, shortly before the hearing. He stated that it was his opinion that "E.A.L. is a danger to himself, others, and unable to care for himself." Smith recommended, as a result, that E.A.L. be committed to the Montana State Hospital and involuntarily medicated if need be. When asked for the basis of his opinion, Smith stated that:

> [D]uring his mental status examination, E.A.L. was unable to present any logical answer to any mental status question, period. . . .
>
> [H]e's talking about machetes and talking about, you know, a school that he is affiliated with in Libby that is making 15.7 million dollars a day, and these are his quotes, in some way related to molesting children, and thought insertion and being . . . in this trance where, you know, these things happen, that's the nature of our conversation.
>
> It was . . . bizarre. It was delusional. He was tangential. He was speaking in kind of a word salad at times and inserting words, singing nursery rhymes while answering questions with no . . . train of thought, logical transition, or explanation for his statements.
>
> So he did, in my interview, talk about a machete, and he did make reference to peglegging somebody . . . and this is consistent with the record, that he was threatening to chop people with a machete in Libby. . . .
>
> [M]y concern is that he's made numerous threats in the community . . . and he believes that he's ready to walk on the street today and that . . . he has large offshore bank accounts with millions of dollars due to a . . . relationship with Google.
>
> I mean it goes on and on. So there's really no logic or coherence or safety in the situation.

Smith also stated that E.A.L. was not "treatment adherent." E.A.L., on the other hand, testified that he took his medications, that the medications were beneficial to him, that he

did not like violence, that he did not wish to hurt anyone, and that he did not believe he needed to be committed.

¶5 Following E.A.L.'s testimony, the District Court committed E.A.L. to the Montana State Hospital for 90 days. It issued a written order and findings of fact on June 5, 2014. E.A.L. appeals from that order.

## STANDARD OF REVIEW

¶6 We review a district court's findings of fact for clear error. *In re Mental Health of A.S.B.*, 2008 MT 82, ¶ 16, 342 Mont. 169, 180 P.3d 625. A finding of fact is clearly erroneous if it is not supported by substantial evidence, if the trial court misapprehended the effect of the evidence, or if this Court has a definite and firm conviction after reviewing the record that a mistake has been made. *A.S.B.*, ¶ 16. When considering whether a finding is supported by substantial evidence, we view the evidence in the light most favorable to the party that prevailed before the District Court. *A.S.B.*, ¶¶ 16-17.

## DISCUSSION

¶7 *1. Was the District Court's finding that E.A.L. posed an imminent threat of harm to himself or others clearly erroneous?*

¶8 E.A.L. argues that the District Court's order was based on findings of fact that were clearly erroneous. Specifically, E.A.L. argues that there was not substantial evidence to support the District Court's finding that "[b]ased on his mental state and recent behaviors, [E.A.L.] is a danger to others." We disagree.

¶9 The circumstances in which and the process by which a person may be involuntarily committed are strictly controlled by statute. *In re Mental Health of E.P.B.*,

4

2007 MT 224, ¶ 7, 339 Mont. 107, 168 P.3d 662. A district court may only order commitment after finding both that the respondent suffers from a mental disorder and that he or she satisfies at least one of four criteria. Sections 53-21-126(1) and -127(7), MCA. One such criterion is that "because of a mental disorder, there is an imminent threat of injury to the respondent or to others." Section 53-21-126(1)(c), MCA. If this is the basis on which a district court orders commitment, imminent threat of injury must be proved by overt acts or omissions. Section 53-21-126(2), MCA.

¶10 In this case, the District Court decided that commitment was justified based on its finding that, because of his mental disorder, E.A.L. posed an imminent threat of injury to himself or others. This finding was not clearly erroneous. Instead, it was supported by substantial evidence.

¶11 Despite E.A.L.'s insistence otherwise, Smith's testimony provided substantial evidence that supported the court's findings. It was not insufficient, as E.A.L. argues, merely because it was contradicted by E.A.L.'s testimony or because there may have been some minor inconsistencies in Smith's statements. Weighing competing evidence and assessing the credibility of a witness's testimony is the province of the finder of fact. We will not disturb a district court's assessment on appeal. M. R. Civ. P. 52(a)(6); *In re B.O.T.*, 2015 MT 40, ¶ 23, 378 Mont. 198, 342 P.3d 981; *In re J.A.B.*, 2015 MT 28, ¶ 25, 378 Mont. 119, 342 P.3d 35. The District Court did not find that Smith's testimony was incredible, and we see no reason to hold otherwise. Moreover, we cannot say, as E.A.L. seems to encourage us to do, that the testimony of one witness is insufficient to prove that commitment is justified. Indeed, the Legislature seems to have indicated that

5

in commitment proceedings the testimony of a professional person that has evaluated the respondent may provide a sufficient basis for a district court to order commitment. *See* § 53-21-126(4), MCA (stating that a professional person's testimony about whether a respondent requires commitment "is insufficient *unless* accompanied by evidence from the professional person or others" that any of the criteria listed in § 53-21-126(1), MCA, have been fulfilled) (emphasis added).

¶12 Regardless of the weight of Smith's testimony, E.A.L. also argues that the District Court's finding was clearly erroneous because the State failed to present evidence of "overt acts or omissions" proving an imminent threat of injury. This is incorrect. While E.A.L. is correct that evidence of overt acts is required to prove an imminent threat, there was evidence that E.A.L. made threats to harm others with a machete. This was sufficient evidence of overt actions for the District Court to find that E.A.L. posed an imminent threat of injury.

¶13 We addressed the statutory overt acts requirement of an imminent threat finding in *In re D.D.*, 277 Mont. 164, 920 P.2d 973 (1996). This decision was statutorily overruled on other grounds, but we have continued to rely on it for guidance about what constitutes an overt act. *A.S.B.*, ¶ 28 (relying on *In re D.D.* after the most recent amendments to § 53-21-126, MCA); *In re L.L.A.*, 2011 MT 285, ¶¶ 16-17, 362 Mont. 464, 267 P.3d 1 (stating that *In re D.D.* was legislatively overruled insofar as the decision addressed the subsequently amended "detailed statement of the facts" requirement of § 53-21-127(8)(a), MCA). In *In re D.D.* we stated that "[e]vidence of actual violence or physical harm is not required to satisfy the provision 'imminent threat of injury'. . . .

6

While the danger must be fairly immediate, an overt act need not be a completed act; an attempt or threat, or even a failure to act, may suffice." 277 Mont. at 168, 920 P.2d at 975. Analogizing a case in which this Court decided that a woman's statement to a mental health professional about her plan to buy a gun and shoot her neighbor was an "overt act," we determined that D.D.'s statements to the professional person that evaluated him also qualified as overt acts. *D.D.*, 277 Mont. at 168, 920 P.2d at 975 (citing *In re Mental Health of E.M.*, 265 Mont. 211, 213, 875 P.2d 355, 356 (1994)). Specifically, we found that D.D.'s delusional statements to the professional person about someone that was breaking into his apartment, about his belief that this person "should be treated like a rabid dog," and about his desire to harm this person were overt acts. *D.D.*, 277 Mont. at 168-69, 920 P.2d at 975.

¶14 Similarly, Smith testified in this case that E.A.L. had told him that he believed people at a particular school in his community were molesting children and that he wished to harm them with a machete. Smith also testified that throughout his disjointed conversation with E.A.L., E.A.L. perseverated about the machete. As in *In re D.D.*, such statements, when viewed in a light most favorable to the State, were overt acts, and they provided substantial evidence for the District Court to find that E.A.L. posed an imminent threat of injury to himself or others.

¶15 For the foregoing reasons, we decide that the District Court's finding that E.A.L. posed an imminent threat of injury was not clearly erroneous.

¶16    *2. Did the District Court err by basing findings of fact on statements made in the State's petition for commitment?*

¶17    E.A.L. argues that the District Court made several findings of fact based solely on allegations made in the State's petition for commitment. He contends that these allegations were unsupported by testimony or by other evidence admitted at the hearing, and he argues that the District Court's order should be reversed as a result.

¶18    However, assuming arguendo that the District Court made such an error, it was harmless. Even if we were to exclude the findings of fact that E.A.L. claims were only supported by the petition and were unsupported by evidence from the hearing, all of Smith's testimony that was discussed above would still have been admitted before the District Court. As discussed above, this testimony provided substantial evidence for the District Court's finding that E.A.L. posed an imminent threat of injury. That finding was not clearly erroneous, regardless of whether the District Court considered the facts recited in the State's petition. As this finding provided a sufficient basis for the District Court to order commitment, any reliance by the District Court on the facts stated in the petition was harmless. *See A.S.B.*, ¶¶ 34-36 (deciding that it was harmless error for a district court to incorporate the professional person's written report, which was not admitted at the commitment hearing, into its order, because other properly admitted evidence independently provided substantial evidence to support its finding of an imminent threat).

## CONCLUSION

¶19    The District Court found that E.A.L. posed an imminent threat of injury to himself or to others because of his mental disorder. This finding was not clearly erroneous. Even

8

without considering evidence that E.A.L. claims the District Court improperly relied upon, the finding was supported by substantial evidence. Coupled with the District Court's uncontested finding that E.A.L. suffered from a mental disorder, this finding provided a sufficient basis for the District Court to commit E.A.L. We affirm.


/S/ MICHAEL E WHEAT

We Concur:

/S/ MIKE McGRATH
/S/ JAMES JEREMIAH SHEA
/S/ PATRICIA COTTER


Justice Laurie McKinnon, dissenting.

¶20 I respectfully dissent.

¶21 Section 53-21-126, MCA, contemplates the satisfaction of two requirements prior to the involuntary commitment of an individual. The first requirement is a finding that the person suffers from a mental disorder as defined in § 53-21-102(9), MCA. The second requirement directs the court to consider four circumstances relevant to determining whether, as a result of an individual's mental disorder, commitment is necessary. Relevant here is § 53-21-126(1)(c), MCA: "whether, because of a mental disorder, there is an imminent threat of injury to the respondent or to others because of the respondent's acts or omissions . . . ."

¶22 The statute mandates that "the respondent's mental disorder must be proved to a reasonable medical certainty," and "[i]mminent threat of . . . injury to others must be

9

proved by overt acts or omissions, sufficiently recent in time as to be material and relevant as to the respondent's present condition." Section 53-21-126(2), MCA. The rules of evidence apply in an involuntary commitment proceeding, and "any matter otherwise inadmissible, such as hearsay matter, is not admissible merely because it is contained in the [professional person's] report." Section 53-21-126(3), MCA. Moreover, any physical fact must be proven beyond a reasonable doubt, and all other matters must be proven by clear and convincing evidence. Section 53-21-126(2), MCA.

¶23 The only evidence that may be relied upon to substantiate a court's order of commitment is evidence presented during the respondent's trial. *In re Mental Health of C.R.C.*, 2004 MT 389, ¶¶ 18-19, 325 Mont. 133, 104 P.3d 1065. It is therefore self-evident, and E.A.L. is correct in arguing, that allegations in the petition for commitment that are unsupported by evidence at trial may not be the basis for commitment. Here, the evidence presented at trial came from one witness: Walker Smith, a certified professional person. Mr. Smith opined that E.A.L. suffered from paranoid schizophrenia and poly substance abuse or dependence. His opinion, however, was not to a "reasonable medical certainty."[1] The only evidence presented during the trial of an "overt act" supporting a finding that E.A.L. presented an imminent threat of injury to others was the following testimony from Mr. Smith:

> So he did, in my interview, talk about a machete, and he did make reference to peglegging somebody which I assume means, you know, and this is consistent with the record, that he was threatening to chop people with a machete in Libby.

___

[1] Although this error has not been raised on appeal, it nevertheless demonstrates overall the insufficient manner in which the proceedings were prosecuted.

10

So, you know, my—my concern is that he's made numerous threats in the community leading to an emergency detention that has brought him hundreds of miles here to be stabilized on the unit . . . .

During Smith's cross-examination, however, it became unclear as to who brought up the machetes—Smith or E.A.L.—and whether, by making those references, E.A.L. was only responding to the allegations in the petition. The record is thus far from clear as to whether Smith was testifying that during the evaluation, E.A.L. responded to the allegations contained in the petition, or that E.A.L. actually made threats during the evaluation. A fair reading of the entire trial transcript is that Smith brought up the machetes, and E.A.L. explained that he "*didn't want a machete to peg leg people.*"

¶24     In order to substantiate a conclusion that the respondent poses an imminent threat of injury to others, the State was required to prove, through admissible evidence, an "overt act." Section 53-21-126(2), MCA. While we have recognized that a threat to kill may constitute an overt act, not every threat can be considered an overt act. *Matter of Goedart*, 180 Mont. 484, 487, 591 P.2d 222, 224 (1979). There must be "proof beyond a reasonable doubt that there is a present indication of probable physical injury likely to occur at any moment or in the immediate future . . . ." *In re Mental Health of E.M.*, 265 Mont. 211, 213, 875 P.2d 355, 356-57 (1994) (quoting *In re F.B.*, 189 Mont. 229, 233, 615 P.2d 867, 869-70 (1980)). While evidence of actual violence or physical harm is not required to satisfy the "imminent threat of injury" provision, *In re F.B.*, 189 Mont. at 235, 615 P.2d at 870 imminent threat of injury to others must be evidenced by overt acts sufficiently recent as to be material and relevant to the person's present condition. Section 53-21-126(2), MCA.

11

¶25 Here, there was no competent evidence that E.A.L. made threats to hurt people with a machete. Hearsay allegations from E.A.L.'s mother contained within the State's petition were not supported by evidence at trial, and are insufficient to establish beyond a reasonable doubt that E.A.L. even made the threat. At best, Smith's testimony established that he was relying on information contained in records and reports that E.A.L. had made verbal threats in the community. Evidence "otherwise inadmissible, such as hearsay matter, is not admissible merely because it is contained in the report," or testified to in the opinion of the professional person, and "testimony [of the professional person] is insufficient unless accompanied by evidence" that the respondent poses an imminent threat of injury to others "because of the respondent's acts . . . ." Section 53-21-126(3)-(4), MCA. There was no evidence that E.A.L. had a machete or intended to acquire one, and testimony about threats allegedly made by E.A.L. was inconsistent and lacked specificity as to time, source, victim, or place. No witness presented had personal knowledge of the threat, which would have provided credible evidence from which an overt act could be found beyond a reasonable doubt.

¶26 Our decision today is inconsistent with prior cases in which we have evaluated the sufficiency of evidence of an overt act justifying a determination of imminent threat of injury. In *In re C.R.C.*, ¶ 23, we concluded that C.R.C's statement that "if she had a gun she had shot somebody" contained no threat of injury to a particular person, and the record did not reflect that C.R.C. had access to a gun. Even though C.R.C. had been in a fight with another person, gunshots were heard, and the witness hearing the threat testified at trial, this Court found that the district court's findings of imminent threat of

12

injury were not supported by substantial evidence. In *In re C.R.C.*, ¶ 37. In *In re D.D.*, 277 Mont. 164, 920 P.2d 973 (1996), the professional person testified at D.D.'s commitment hearing that D.D. was a danger to himself because he was constantly paranoid and afraid that someone was going to attack him. The professional person opined that D.D. could very easily attack someone out of fear of being attacked himself and due to his inability to control his paranoia. During an interview, D.D. told the professional person that a person D.D. perceived as a threat "should be treated like a rabid dog." We concluded that the record contained sufficient evidence, including D.D.'s statements, to establish that D.D. experienced paranoia and that there was an imminent threat he would injure others if he mistakenly believed he was being attacked. In *In re Mental Health of E.M.*, 265 Mont. 211, 213, 875 P.2d 355, 356 (1994), E.M. told mental health professionals that she was going to buy a gun and then shoot her neighbor and herself. We concluded that E.M.'s repeated threats to kill her neighbor and herself, combined with her stated intent to obtain a gun and a professional person's opinion that the threats constituted a "very clear danger" satisfied the "overt acts" requirement. *In re E.M.*, 265 Mont. at 214, 875 P.2d at 357.

¶27 We addressed the matter of defining an "imminent threat" in *Matter of Goedert*, 180 Mont. at 486, 591 P.2d at 224, where Goedert had publicly threatened to kill a woman whom he had previously accused of involvement in the killing of his brother. He repeated the threats to a police officer after being arrested in connection with the incident. In *Matter of R.F.*, 2013 MT 59, 369 Mont. 236, 296 P.3d 1189, we found that the record supported the district court's finding that R.F. was a threat to others where R.F. created a

13

disturbance in the grocery store because he believed he was being assaulted and accused store patrons of being methamphetamine addicts. R.F. tried to hide from snipers and believed they were trying to kill him, taking cover in the back seat of the patrol car. R.F. also threatened emergency room staff and had a paranoid belief that strangers were part of a methamphetamine conspiracy trying to kill him. In *Matter of F.B.*, the respondent caused several disturbances at the Northern Hotel. He was loud and abusive and throwing food. Police officers arrived and knocked on his door requesting to talk to him. He refused admission to the officers. Testimony indicated that F.B. yelled at the officers, and when they entered the room, they observed F.B. with a baseball bat over his shoulder. F.B. testified that he knew they were coming and, therefore, "armed" himself. We concluded F.B. posed an imminent threat of injury to others. These cases evidence circumstances that sharply contrast with those presented here.

¶28    At most, the testimony of Smith established his opinion that E.A.L. presented an imminent threat of injury to others. However, the testimony of a professional person on the ultimate issue of commitment is insufficient unless supported by additional evidence that the respondent poses an imminent threat of injury to others because of his or her acts. Section 53-21-126(4), MCA. Evidence of an overt act is required to establish that the respondent poses an imminent threat of injury to others. Section 53-21-126(2), MCA. No testimony was presented at trial which established beyond a reasonable doubt that E.A.L. even made a threat of injury. E.A.L.'s mother, who presumably heard the threats, did not testify at trial; it is unclear if E.A.L. repeated the threats to Smith during his evaluation; and no other witness testified as to the threats. The record at trial does not

14

establish when the threats were made, to whom they were made, the circumstances surrounding the threats, or that they were sufficiently recent in time as to be material or relevant to E.A.L.'s present condition.

¶29 It is our obligation to enforce rigorous application of statutory mandates in order to protect the rights of those sought to be committed. Section 53-21-126, MCA, states specifically that evidence of a professional person's opinion is insufficient unless accompanied by evidence of an overt act indicating an imminent threat of injury. The State has failed to present sufficient testimony satisfying this mandate. More is required than the professional person's opinion that commitment is necessary.

¶30 I would reverse the judgment of the District Court.


/S/ LAURIE McKINNON