FILED

09/10/2024

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 22-0134

DA 22-0134

IN THE SUPREME COURT OF THE STATE OF MONTANA

2024 MT 202

IN THE MATTER OF:

O.L.K.,

     Respondent and Appellant.

APPEAL FROM:   District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DI-21-32
Honorable Shane A. Vannatta, Presiding Judge

COUNSEL OF RECORD:

     For Appellant:

     Chad Wright, Appellate Defender, Kristen L. Peterson, Assistant
Appellate Defender, Helena, Montana

     For Appellee:

     Austin Knudsen, Montana Attorney General, Cori Losing, Assistant
Attorney General, Helena, Montana

     Matt Jennings, Missoula County Attorney, John Hart, Deputy County
Attorney, Missoula, Montana

Submitted on Briefs: May 15, 2024

Decided: September 10, 2024

Filed:

_____
Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1    O.L.K. appeals from an order of the Fourth Judicial District Court, Missoula County, committing him to Montana State Hospital for a period not exceeding 90 days. We affirm. We restate the issue on appeal as follows:

> *Whether the District Court committed reversible error by considering inadmissible hearsay to show an overt act.*

## FACTUAL AND PROCEDURAL BACKGROUND

¶2    O.L.K. was admitted to Montana State Hospital in January 2022 on a Petition for Involuntary Commitment. The Petition was filed on the recommendation of Michale McLean, LCSW, who evaluated O.L.K. at St. Patrick's Hospital on January 18, 2022, following a disturbance at Winds of Change ("WOC"), a mental health treatment center.

¶3    McLean's evaluation ("St. Patrick's Report") included her own observations as well as reported behavior from medical staff and law enforcement. It indicated that O.L.K. was brought to the hospital by law enforcement for aggressive behavior two separate times that day. According to a note integrated in the St. Patrick's Report from previous mental health provider Maggie Mayfield, who spoke with law enforcement, O.L.K. was first brought to the emergency department after cornering his WOC therapist in "a threatening and aggressive manner" such that the therapist was scared for his safety. O.L.K. was subsequently trespassed from WOC. After O.L.K. was discharged from his first emergency department visit, he returned to WOC and threatened to burn down the building with a lighter. WOC staff called 911 and O.L.K. was transported back to the hospital by law enforcement.

2

¶4 Upon O.L.K.'s second hospital visit, McLean observed that he was cooperative, though "intermittently irritable" and "tangential and rambling." O.L.K. stated that he was in the emergency department for "fighting" and that he was "trying to protect [him]self" and would "kill that son of a bitch." He would not disclose who he was referring to, stating, "I am not going to tell you. I take it very serious when I say that. I mean it. I will do it. I know how to kill someone without hesitating." O.L.K. later became agitated and threatened to kill McLean and other providers.

¶5 The District Court appointed Shannon McNabb, a Licensed Clinical Professional Counselor for United Minds LLC, to serve as the professional person in the involuntary commitment proceedings. McNabb evaluated O.L.K. the day of the hearing and was the State's sole witness. She testified that O.L.K. presented as disorganized and rambling with "delusional thought content" and agitation, and diagnosed him with Bipolar I disorder. During McNabb's evaluation, O.L.K. made multiple statements about a bomb, including that all he needed was a bomb to blow himself up, "[p]ush the button," and that a bomb had gone off in the universe. McNabb testified that O.L.K. "made multiple homicidal statements, being that he wanted to kill somebody, and that whoever wanted to push this bomb button was who he wanted to kill." McNabb summarized that her opinion relied "on his presentation, as well as his statements that he wanted to kill people, and his delusional content in that there was a bomb that somebody was going to blow up and that somebody was going to harm him."

¶6     McNabb testified that, in addition to her own observations, she relied on records from Montana State Hospital, police incident reports, County Attorney records, and the St. Patrick's Report. The State asked McNabb about specific parts of the St. Patrick's Report, eliciting testimony about the events leading up to O.L.K.'s hospitalization. O.L.K.'s attorney raised a hearsay objection but was overruled on what the District Court characterized as "the medical records exception" of the Montana Rules of Evidence. O.L.K.'s attorney renewed the objection shortly thereafter, pointing out that "there is no medical records exception to the hearsay rule in Rule 803," to which the District Court pointed to Montana Rule of Evidence 803(6) and again overruled the objection.

¶7     On redirect, McNabb testified about O.L.K.'s threat to burn down WOC with a lighter and homicidal statements made to McLean. O.L.K.'s attorney objected on hearsay grounds and was overruled again; the District Court reasoned that McNabb was "reading medical records that are relating to a diagnosis and medical treatment, as well as records that were created reasonably close in time to the events in question. And, therefore, . . . 803(4) and (6) are applicable."

¶8     Relying on McNabb's opinion and recommendation, the District Court found that O.L.K. suffered from Bipolar I disorder and that he required commitment based on his presenting an imminent risk to others. The District Court's order specifically referenced O.L.K.'s statements to McLean and threats against his WOC therapist. O.L.K. was committed to Montana State Hospital, the least restrictive alternative placement, for no more than 90 days.

4

## STANDARD OF REVIEW

¶9　We review evidentiary rulings for abuse of discretion. *In re L.S.*, 2009 MT 83, ¶ 18, 349 Mont. 518, 204 P.3d 707. To the extent that the district court's ruling interprets an evidentiary rule or statute, we review de novo. *State v. Derbyshire*, 2009 MT 27, ¶ 19, 349 Mont. 114, 201 P.3d 811.

¶10　We review a district court's involuntary civil commitment order to determine whether the court's findings of fact are clearly erroneous and whether its conclusions of law are correct. *In re S.L.*, 2014 MT 317, ¶ 20, 377 Mont. 223, 339 P.3d 73. "A finding of fact is clearly erroneous if it is not supported by substantial evidence, if the district court misapprehended the effect of the evidence, or if we are left with a definite and firm conviction that a mistake has been made after reviewing the entire record." *In re S.L.*, ¶ 20. Evidence is viewed in the light most favorable to the prevailing party when determining whether substantial credible evidence supports the district court's findings. *In re Mental Health of A.S.B.*, 2008 MT 82, ¶ 17, 342 Mont. 169, 180 P.3d 625.

## DISCUSSION

¶11　Involuntary mental health commitment proceedings are civil matters that implicate fundamental liberty interests in a manner similar to criminal proceedings. *In re C.K.*, 2017 MT 69, ¶ 12, 387 Mont. 127, 391 P.3d 735 (citations omitted). To safeguard against the "calamitous effect" of an erroneous deprivation of liberty and damage to a person's reputation, courts must strictly adhere to the statutory standards of proof, procedural

requirements, and substantive criteria set forth by statute. *In re C.K.*, ¶ 12 (citations omitted).

¶12 In involuntary commitment determinations, the district court first considers whether the respondent suffers from a mental disorder to a reasonable degree of medical certainty. Section 53-21-126(1)-(2), MCA. The court then determines whether the respondent requires commitment based on several potential bases including "whether, because of a mental disorder, there is an imminent threat of injury to the respondent or to others because of the respondent's acts or omissions." Section 53-21-126(1)(c), MCA.

¶13 The State must show an imminent threat of injury to self or others by "overt acts or omissions, sufficiently recent in time as to be material and relevant as to the respondent's present condition." Section 53-21-126(2), MCA. The overt act must be proven by evidence "separate from the professional person's testimony." *In re C.V.*, 2016 MT 307, ¶ 21, 385 Mont. 429, 384 P.3d 1048.

¶14 O.L.K. does not contest the finding of his Bipolar I diagnosis. Rather, he argues that the District Court relied on inadmissible hearsay contained in the St. Patrick's Report as substantive evidence to satisfy the overt act requirement and that O.L.K.'s statements to McNabb, considered in isolation, are too vague and incoherent to show an overt act. He also contends that because McNabb was the sole witness, the State failed to meet the statutory requirement of § 53-21-126(2), MCA.

¶15 First, O.L.K. asserts that because the State "proved its entire case through the professional person McNabb," it necessarily failed to "introduce evidence of the

6

Respondent's recent overt acts or omissions separate from the professional person's testimony." *In re C.V.*, ¶ 21. However, this argument reads too far into the meaning of separate and overlooks that McNabb conducted her own evaluation of O.L.K. in which he made independently admissible statements evincing an overt act.

¶16 O.L.K. points to *In re Mental Health of T.J.D.*, 2002 MT 24, 308 Mont. 222, 41 P.3d 323, and *In re Mental Health of D.L.T.*, 2003 MT 46, 314 Mont. 297, 67 P.3d 189, *overruled on other grounds*, *Johnson v. Costco Wholesale*, 2007 MT 43, 336 Mont. 105, 152 P.3d 727, for the assertion that the State failed to present evidence of an overt act because it relied on McNabb's testimony. Indeed, in those cases, as here, the professional person was the State's only witness. *In re Mental Health of T.J.D.*, ¶ 6; *In re Mental Health of D.L.T.*, ¶ 11. But they are otherwise distinguishable. In *In re Mental Health of T.J.D.*, we found that hearsay statements contained in the professional person's report were "the only evidence in the record the court could have relied on" to find an imminent threat of injury based on an overt act or omission. ¶ 16. Similarly, in *In re Mental Health of D.L.T.*, we found that the only evidence of an overt act or omission was "statements of persons not present at the hearing, which were introduced for the purpose of proving [the respondent's] acts." ¶ 17. In contrast, here, O.L.K. made statements to McNabb during their evaluation that are independently admissible as admissions by a party-opponent, M. R. Evid. 801(d)(2), discussed further below.

¶17 In addition, nothing in the relevant statutes suggests that evidence of an overt act may *not* come from the professional person. Section 53-21-126(2), MCA, states that

7

imminent threat of injury must be proved by overt acts or omissions, and § 53-21-126(4), MCA, states that "[t]he professional person may testify as to the ultimate issue of whether the respondent is suffering from a mental disorder and requires commitment. This testimony is insufficient unless accompanied by evidence *from the professional person or others* that . . . there is an imminent threat . . . ." (Emphasis added.) A professional person may testify in their expert capacity, as well as in a lay witness capacity, based on their personal knowledge of the matter. M. R. Evid. 602. Thus, while we require overt acts to be shown by "evidence separate from the professional person's testimony," *In re C.V.*, ¶ 21, we hold that such evidence may come in the form of admissible lay witness testimony from the professional person.

¶18 Next, O.L.K. argues the District Court erred in relying on inadmissible hearsay as substantive evidence of the overt act. We agree. Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted," and is generally inadmissible. M. R. Evid. 801(c), 802. Double hearsay is only admissible if each part of the statement satisfies a hearsay exception. M. R. Evid. 805. A hearsay statement is not admissible merely because it is contained in a professional person's report. Section 52-21-126(3), MCA.

¶19 We hold the District Court erred in ruling that statements contained in the St. Patrick's Report were admissible as substantive evidence through a hearsay exception. Montana Rule of Evidence 803(6), the business records exception, applies to records made at or near the time of the event "if kept in the course of a regularly conducted business

8

activity, and if it was the regular practice of that business activity." The admission of business records requires a foundational showing from the entity that created the record that "the record was prepared in accordance with its regular and trustworthy business practices." *State v. Baze*, 2011 MT 52, ¶ 19, 359 Mont. 411, 251 P.3d 122. No such foundation was laid by McNabb's testimony about the St. Patrick's Report, nor could it have been, as nothing in the record suggests she was affiliated with the hospital. The same issue applies to the hearsay within hearsay of Mayfield's note contained within the St. Patrick's Report detailing the threats at WOC.

¶20 Montana Rule of Evidence 803(4) applies to "statements made for purposes of medical diagnosis or treatment." This exception is supported by the reasoning that a declarant seeking medical treatment "possesses a selfish motive in telling the truth" to effectuate appropriate care and therefore makes trustworthy statements. *State v. Harris*, 247 Mont. 405, 412-13, 808 P.2d 453, 457 (1991). We consider whether a statement is within the purpose of the exception using a two-part test. First, the declarant's motive in making the statement must be consistent with seeking medical treatment. Second, the statement must be of a type reasonably relied on by a physician when making diagnosis and treatment decisions. *Harris*, 247 Mont. at 412, 808 P.2d at 457 (citing *State v. J.C.E.*, 235 Mont. 264, 270, 767 P.2d 309, 313 (1988), *overruled in part on other grounds*, *State v. S.T.M.*, 2003 MT 221, 317 Mont. 159, 75 P.3d 1257).

¶21 Statements in the St. Patrick's Report from Mayfield's note, which in turn incorporated statements of law enforcement and other unknown parties—none of whom

were seeking medical treatment for themselves—are well outside the purpose of the exception. The only statements to which the exception could possibly apply are statements and omissions O.L.K. made to McLean: That he was trying to protect himself, that he would "kill that son of a bitch," that he would not tell McLean who he was referring to, and his response that "I take it very serious when I say that, and I mean it. I will do it. I know how to kill someone without hesitating."

¶22 The question remains whether these statements are within the purpose of Rule 803(4). We conclude that they are not. O.L.K.'s motive in making the statements was not consistent with seeking medical treatment, as he was involuntarily detained for psychiatric evaluation and did not manifest any desire for medical treatment while being evaluated. He therefore lacked the "selfish motive" that ensures the trustworthiness of such out-of-court statements. We hold that no part of the St. Patrick's Report was admissible under either of the District Court's stated exceptions.

¶23 The State asserts that the substance of the St. Patrick's Report is nonetheless admissible under Montana Rule of Evidence 703, "Basis of opinion testimony by experts." We disagree to the extent the District Court used the St. Patrick's Report for any other purpose than considering McNabb's credibility. Qualified expert testimony is admissible if scientific, technical, or other knowledge will assist the trier of fact in determining a fact at issue in the case. M. R. Evid. 702. An expert may base their opinion on otherwise inadmissible evidence so long as the information is "of a type reasonably relied upon by experts in a particular field." M. R. Evid. 703. The expert may testify to otherwise

inadmissible information, including statements of third parties, to the extent it is relevant to the basis of their opinion. *In re C.K.*, 2017 MT 69, ¶¶ 18, 29, 387 Mont. 127, 391 P.3d 735. However, as we held in *In re C.K.* and emphasize again here, "the sole purpose of admission of otherwise inadmissible hearsay under Rule 703 is to aid the finder of fact in assessing the credibility and reliability of the expert's opinion," not as "a conduit to admit otherwise inadmissible information as substantive evidence." *In re C.K.,* ¶ 21; *see also In re G.M.*, 2024 MT 49, 415 Mont. 399, 544 P.3d 893 (finding hearsay statements contained in mental health evaluation admissible for limited purpose of assessing value of expert opinion). Thus, while McNabb permissibly testified to the St. Patrick's Report's contents as part of the basis of her opinion, the District Court could not use the statements to McLean and incidents at WOC as separate substantive evidence of an overt act, and erred in doing so.

¶24 Hearsay aside, we conclude that there is substantial admissible evidence of an overt act based on O.L.K.'s statements to McNabb. "[A]n overt act need not be a completed act; an attempt or threat, or even a failure to act, may suffice." *In re E.A.L.*, 2015 MT 203, ¶ 13, 380 Mont. 129, 353 P.3d 1186 (quoting *In re D.D.*, 277 Mont. 164, 168, 920 P.2d 973, 975 (1996), *superseded by statute on other grounds*, § 53-21-127(8)(a), MCA). In *In re D.D.*, we found that delusional statements to the professional person that someone was breaking into D.D.'s apartment and that D.D. desired to harm that person were overt acts, in part because the professional person testified D.D. was paranoid and afraid someone would attack him. 277 Mont. at 168-69, 920 P.2d at 975. Likewise, in *In re E.A.L.*,

delusional statements to the professional person perseverating on a machete and desiring to harm unidentified persons at a school were overt acts. *In re E.A.L.*, ¶ 14.

¶25 Here, McNabb testified that O.L.K. believed someone was going to harm him and noted that he presented as "fairly defensive." O.L.K. made multiple homicidal statements that "whoever wanted to push this bomb button was who he wanted to kill." These statements are admissible non-hearsay pursuant to M. R. Evidence 801(d)(2) as admissions by a party-opponent. Thus, though O.L.K.'s statements to McNabb were vague, we find that they satisfy the overt act requirement.

¶26 Because the District Court found sufficient admissible evidence to support its conclusion that O.L.K. satisfied the overt act requirement, we decline to address the parties' arguments regarding when and how the harmless error standard may be appropriate.

## CONCLUSION

¶27 Though the District Court erred in finding statements in the St. Patrick's Report admissible as hearsay exceptions, we conclude that there was nonetheless substantial admissible evidence separate from McNabb's professional testimony to show that O.L.K. presented an imminent threat of injury to others based on an overt act. The District Court's decision is therefore not clearly erroneous, and its decision is affirmed.

/S/ LAURIE McKINNON

We Concur:

/S/ MIKE McGRATH
/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER
/S/ JIM RICE