No. 85-126

IN THE SUPREME COURT OF THE STATE OF MONTANA

1985

_____

IN THE MATTER OF J.M.

_____

APPEAL FROM:   District Court of the Thirteenth Judicial District,
               In and for the County of Yellowstone,
               The Honorable Robert Holmstrom, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Terry Seiffert, Billings, Montana

    For Respondent:

        Harold Hanser, County Attorney, Billings, Montana

_____

                         Submitted on Briefs:   May 9, 1985

                                    Decided:   August 15, 1985

Filed:   AUG 1 5 1985


                    _Ethel M. Harrison_
_____
                    Clerk

Mr. Justice Fred J. Weber delivered the opinion of the Court.

The Yellowstone County Attorney filed a petition in the District Court of the Thirteenth Judicial District alleging that appellant (J.M.) is seriously mentally ill and requesting that he be committed to a mental health facility. After initial detention, examination by a professional person and a hearing at which J.M. was present, the District Court entered its findings and ordered that J.M. be committed to the Montana State Hospital for treatment and evaluation not to exceed 3 months unless extended as provided by law. J.M. appeals. We affirm the District Court.

The issues raised by the appellant are:

1. Was there sufficient evidence to support the finding of the District Court that J.M. was suffering from a mental disorder?

2. Was there sufficient evidence to support the finding of the District Court that J.M. is seriously mentally ill within the meaning of § 53-21-102(14), MCA?

On February 1, 1985, at the request of J.M.'s cousin, the Yellowstone County Attorney filed a petition in District Court alleging that J.M. was seriously mentally ill and requesting that he be committed to a mental health facility. Initially, the District Court found probable cause to believe J.M. was seriously mentally ill and ordered that he be detained pending a hearing. After the initial appearance of J.M. and his counsel on February 4, the court ordered that an examination by a professional person be conducted at the South Central Montana Regional Mental Health Center. A hearing was then held on February 7, 1985, following which the court entered its findings of fact and ordered that J.M. be committed to the Montana State Hospital in Warm Springs.

Counsel for J.M. emphasizes the testimony on the part of J.M. and others which he finds to be favorable on the issues.

2

Under these circumstances, we will quote at some length from the findings on the part of the District Court, and then consider whether or not there is sufficient evidence to affirm these findings.

The District Court's Statement of Facts dated February 7, 1985, includes the following:

> "[J.M.'s] relative by marriage, David Grimmett, testified that [J.M.] came to the home Grimmett and his wife own in Laurel, at any hour of the day or night, claiming to be the heir to the home; that [J.M.] threatened to beat up a cousin to obtain a gun he believe he should have inherited; that [J.M.] had stated he wanted a gun to go get money from a bank in Livingston; that [J.M.] had tried to goad Mr. Grimmett into fighting with him; and that [J.M.] wanted Grimmett to obtain a horse for him to ride to California. An acquaintance, Sharon Summers, testified to hearing [J.M.] several times claim that before he was done, he would get a gun and shoot the heads off a lot of people. [J.M.] denied every one of these statements, and admitted in response to the court's questions that his uncle died at some unknown time after 1966, and [J.M.] believe [sic] his cousin may have poisoned his uncle."

In addition, the Statement of Facts stated the following with regard to the examination by the health professional:

> "At the commitment hearing, Scott Schreiber, a Certified Mental Health Professional for the State of Montana testified that he had evaluated [J.M.] at the Billings Deaconess Hospital Emergency Room on January 25, 1985, and had attempted to conduct an evaluation of [J.M.] at the jail, pursuant to the court's order, on February 6, 1985. Mr. Schreiber testified that [J.M.] was confused, agitated and intermittently threatening in his behavior at the emergency room; that he was apparently delusional in his belief that his uncle had been poisoned by [J.M.'s] cousin; that he paced the room and glared at Schreiber, attempting to stare him down; that he refused to answer certain questions, and generally exhibited poor judgment in his hostile and uncooperative behavior toward Schreiber. Schreiber's tentative diagnosis was that [J.M.] suffers from organic brain disorder, with subheadings of organic delusional disorder and organic personality syndrome. Schreiber

3

testified that his further contact with [J.M.] on February 6, 1985, and [J.M.'s] attitude and behavior during Schreiber's attempt to conduct his evaluation, were consistent with Schreiber's diagnosis. Schreiber further testified that, because of [J.M.'s] poor judgment and poor impulse control, and because of his intense and unpredictable feelings, together with his threats toward others, Schreiber believes [J.M.] to represent a threat of imminent injury to others. For that reason, Schreiber recommended long term residential treatment to confirm his diagnosis and provide [J.M.] with treatment.

". . .

"Scott Schreiber further testified that no local facilities are equipped to require [J.M.] to remain on premises and comply with recommendations regarding medication or treatment; the psychiatric unit at Deaconess Hospital is a short-term residential facility. Schreiber indicated that closer long-term supervision than that available in Billings is required to protect [J.M.] and those threatened by him. He recommended that [J.M.] be committed to the Montana State Hospital at Warm Springs for further evaluation and treatment."

In addition, the District Court made the following specific findings of fact and conclusions:

"[J.M.] is in need of long-term treatment for his condition, in addition to any medical help he may need. The least restrictive environment at which [J.M.] can receive the close supervision, evaluation, and care he needs is the Montana State Hospital at Warm Springs, Montana.

"[J.M.] is beyond a reasonable doubt seriously mentally ill as defined in Section 53-21-102, MCA."

By its separate Order dated February 7, 1985, the District Court ordered that J.M. be committed and confined in the Montana State Hospital at Warm Springs for a period of treatment and evaluation not to exceed 3 months, unless extended as provided by law.

4

# I

Was there sufficient evidence to support the finding of the District Court that J.M. was suffering from a mental disorder?

Counsel for J.M. argues that the mental health examination was not conducted by a psychiatrist or a psychologist and therefore suggests that the examination is subject to question. We note that § 53-21-122(2), MCA, provides that the District Court shall appoint a professional person to examine the appellant. "Professional person" is defined in § 53-21-102(10), MCA, as a medical doctor or a person who has been certified by the Department of Institutions, as provided in § 53-21-106, MCA.

The testimony of Mr. Schreiber established that he is a counselor-therapist at the Mental Health Center, that he is a certified mental health professional for the State of Montana, and that he has been so certified for 3 years. No objections were raised in the course of the hearing as to Mr. Schreiber's qualifications. As a result, there is nothing in the record which establishes a need or requirement for either a psychiatrist or psychologist in this case.

Counsel for J.M. further attempts to raise doubts as to the adequacy of the testimony of Mr. Schreiber as a health professional, relying on Matter of N.B. (Mont. 1980), 620 P.2d 1228, 37 St.Rep. 2031. It is true that in N.B. this Court found insufficient evidence to accept the testimony on the part of Mr. Schreiber because of an incomplete record. We concluded that he was a professional person of unknown expertise and that his testimony was essentially insufficient to establish with reasonable medical certainty that N.B. was seriously mentally ill. N.B., 620 P.2d at 1231-32, 37 St.Rep. at 2034-35.

5

We point out that § 53-21-102(10), MCA (1979), which was in effect at the time of the hearing in N.B., has been amended. The amendment allows either a medical doctor or a person who has been certified by the Department of Institutions to qualify as the professional person to make the mental examination. The record in this case establishes that Mr. Schreiber was certified in accordance with §§ 53-21-102(10)(b) & 53-21-106, MCA. We therefore conclude that there is nothing in the record to raise a question as to the qualifications of Mr. Schreiber and his capacity to formulate opinions and recommendations.

Counsel for J.M. also implies that because Mr. Schreiber observed J.M. for a limited period of time on two different occasions, his conclusions are suspect. We have reviewed the transcript which sets forth the testimony on the part of all of the witnesses, including both J.M. and Mr. Schreiber. The record establishes that J.M. was uncooperative in responding to questions on the part of Mr. Schreiber. As a result, an extended examination on either of the two occasions would have been of little value because of the unwillingness of J.M. to respond to any form of extended questioning. The transcript shows that in a similar manner, J.M. refused to respond to the questioning of the District Court at the time of his hearing, in that he refused to advise the court whether or not he was married or had children.

In addition, J.M. attempts to argue that the professional person should not have relied upon any hearsay reports. We affirm the previous determinations by this Court that a professional person may express his opinion as to the serious mental illness of a party even though the evidence of such things as imminent threat of injury are made known by hearsay evidence and not based upon the professional person's

6

personal knowledge. See Matter of G.S. (Mont. 1985), 698 P.2d 406, 42 St.Rep. 451; Matter of C.M. (1981), 195 Mont. 171, 635 P.2d 273. There is no requirement that the facts upon which an expert relies in forming an opinion be in themselves admissible in evidence. Rule 703, Mont.R.Evid.

Mr. Schreiber specifically testified on re-direct with regard to his conclusions that J.M. suffered a mental disorder:

> "Q. Is there any doubt in your mind that [J.M.] suffers from a mental disorder?
>
> "A. No, there's not."

The health professional stated that his diagnosis was an opinion based on a reasonable medical certainty.

The statutory provisions which are applicable are set forth in § 53-21-126(4), MCA, as follows:

> "The professional person may testify as to the ultimate issue of whether the respondent is seriously mentally ill. This testimony is insufficient unless accompanied by evidence from the professional person or others that:
>
> "(a) the respondent is suffering from a mental disorder; and
>
> "(b) the mental disorder has resulted in self-inflicted injury or injury to others or the imminent threat thereof or has deprived the person afflicted of the ability to protect his life or health."

The evidence in the record shows that Mr. Schreiber testified not only that J.M. was seriously mentally ill, but he set forth the data for making the diagnosis, the characteristics of the particular mental disorder which J.M. demonstrated and the effect of that disorder upon J.M. We have carefully reviewed the transcript and conclude that there is substantial evidence to support the conclusion on the part of the District Court that J.M. suffered from a mental disorder.

7

## II

Was there sufficient evidence to support the finding of the District Court that J.M. is seriously mentally ill within the meaning of § 53-21-102(14), MCA?

The definition of "seriously mentally ill" contained in § 53-21-102(14), MCA, is as follows:

> "'Seriously mentally ill' means suffering from a mental disorder which has resulted in self-inflicted injury or injury to others or the imminent threat thereof or which has deprived the person afflicted of the ability to protect his life or health. For this purpose, injury means physical injury. . ."

The standard of proof in any hearing on the question of serious mental illness is stated in § 53-21-126(2), MCA, as follows:

> "The standard of proof in any hearing held pursuant to this section is proof beyond a reasonable doubt with respect to any physical facts or evidence and clear and convincing evidence as to all other matters, except that mental disorders shall be evidenced to a reasonable medical certainty. Imminent threat of self-inflicted injury or injury to others shall be evidenced by overt acts, sufficiently recent in time as to be material and relevant as to the respondent's present condition."

The previously-quoted Statement of Facts of the District Court pointed out that J.M. had threatened to beat up his cousin in order to obtain a gun he believed he should have inherited; that J.M. had stated he wanted a gun to go get money from a bank; that J.M. tried to goad Mr. Grimmett into fighting with him; and J.M. stated several times that before he was done, he would get a gun and shoot the heads off a lot of people. In addition, the Statement of Facts refers to the factual conclusions on the part of Mr. Schreiber that J.M. generally exhibited poor judgment in his hostile and uncooperative behavior because of J.M.'s intense and unpredictable feelings. Mr. Schreiber had concluded that

8

J.M.'s threats towards others represented a threat of imminent injury to others.

We pointed out in the Matter of C.M. (1981), 195 Mont. 171, 635 P.2d 273, that it is sufficient to show there is a present indication of probable injury which may occur in the immediate future. We note that the statute itself provides that imminent threat of injury to others shall be evidenced by overt acts sufficiently recent to be material and relevant. Certainly, the above-mentioned evidence is sufficient to fall within that statutory definition, even though there is an absence of any proved attempt to carry out the threats.

Our careful review of the record indicates there is substantial evidence to support the findings of fact and conclusions of the District Court. We conclude that the evidence was sufficient to support the holding of the District Court that J.M. was seriously mentally ill within the definition of § 53-21-102(14), MCA.

The findings and order of the District Court are affirmed.

_____
Justice

We concur:

_____

_____

_____

Justices

Mr. Justice John C. Sheehy, specially concurring:

I concur in the result here only because no objection was made in this case to Schreiber's qualification, and because no effort was made before the District Court to obtain for J.M. another person "qualified to perform the requested examination." Section 53-21-118(2), MCA.

I do not accept that one not a psychiatrist is qualified to testify that J.M. has a mental disorder to a "reasonable medical certainty." The reasonable medical certainty standard is required by section 53-21-126(2), MCA. Moreover, under Addington v. Texas (1979), 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323, the court must find by "clear and convincing evidence" that commitment is necessary, otherwise the commitment offends due process standards. When a person not a psychiatrist or equally trained physician testifies to a "reasonable medical certainty" that J.M. has a mental disorder, that untrained person is testifying beyond his competence. Such testimony does not rise to the standard of clear and convincing evidence. J.M. was probably denied due process in this case.

The state bureaucrats have engineered the legislature into a sleight-of-hand on the competence of those capable of testifying to a reasonable medical certainty that a mental disorder exists. Thus the legislature has defined a "professional person" as one who is a medical doctor, or one certified by the Department of Institutions with no prescribed standards for such certification. Section 53-21-102(10), MCA. Then the legislature defines "reasonable medical certainty" as certainty judged by the standards of a professional person. Thus slickly does the law permit a

non-doctor to give his judgment of a medical question. I doubt the law provides due process on the most important issue in commitment proceedings: Does the respondent suffer from a mental disorder?

_____
John C. Sheehy
                        Justice