FILED

October 13 2015

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 14-0791

DA 14-0791

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2015 MT 293

ROBIN REESE,

        Plaintiff and Appellant,

    v.

BETTY ROSEANN STANTON and
HARLOW'S SCHOOL BUS SERVICE, INC.
OF MONTANA, a Montana Corporation,

        Defendants and Appellees.

APPEAL FROM:    District Court of the Eleventh Judicial District,
In and For the County of Flathead, Cause No. DV 12-776(C)
Honorable Heidi Ulbricht, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

            Angela Jacobs Persicke, Hammer, Jacobs & Quinn, PLLC; Kalispell,
Montana

            Michael A. Viscomi, Viscomi & Gersh, PLLP; Whitefish, Montana

        For Appellees:

            Patrick M. Sullivan, Poore, Roth, & Robinson, PC; Butte, Montana

Submitted on Briefs:  August 19, 2015
Decided:  October 13, 2015

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Robin Reese (Reese) appeals from the denial of Reese's motion for a new trial by the Eleventh Judicial District Court, Flathead County. We affirm in part, reverse in part, and remand for a new trial.

¶2 We address the following issues on appeal:

*1. Did the District Court abuse its discretion when it admitted into evidence the opinions and reports of doctors who did not testify at trial?*

*2. Did the District Court abuse its discretion when it excluded evidence of the original charges billed by medical providers?*

*3. Did the District Court abuse its discretion when it struck portions of a video deposition as previously undisclosed expert opinion?*

## PROCEDURAL AND FACTUAL BACKGROUND

¶3 On November 13, 2009, Reese, while in the course of her employment with Montana Coffee Traders, Inc., was a passenger in a van that was struck by a bus owned by Harlow's School Bus Service (HSBS). As a result of the accident, Reese suffered injuries.

¶4 Reese filed a Workers' Compensation claim. Reese's Workers' Compensation claim was managed by Mary Jane Barrett, a nurse. Barrett's management of the claim involved several inquiries. First, the claim was referred to Rod Wallette, a vocational rehabilitation expert, to conduct a job analysis to determine the demands of Reese's current job. Wallette's report determined that Reese's job at Montana Coffee Traders was a medium-duty job. Next, Reese's physical condition was evaluated by an

2

Independent Medical Panel (Wellcare Panel), which consisted of Drs. Wilson, Vincent, and Heidi. Then, Reese was evaluated by Dr. Stratford, a psychiatrist. The Wellcare Panel's evaluation and report on Reese's condition opined that Reese could return to her time-of-injury job at Montana Coffee Traders. Dr. Stratford opined that nothing prohibited Reese from returning to work. Barrett prepared a closure report, concluding Reese was under no work restrictions. As a result, Workers' Compensation discontinued payments to Reese.

¶5 In July 2012, Reese filed suit against HSBS for accident-related injuries and sought medical payments, lost wages, and loss of earning capacity damages. The District Court granted Reese partial summary judgment on the issue of liability, and ordered that the issues of causation and damages would be determined at trial.

¶6 Reese retained Anne Arrington as a vocational rehabilitation expert. Arrington opined that Reese could not return to her job at Montana Coffee Traders, and as a result, would have a permanent loss of earning capacity because she would have to be employed in a light duty or sedentary job. Arrington's report stated that she had reviewed the Wellcare Panel's report, Dr. Stratford's report, Barrett's report, and Wallette's reports, along with numerous other documents, as part of her review. At her deposition, Arrington stated she had relied on the medical records identified in her report, including the Wellcare Panel's report and Dr. Stratford's report, in forming her opinion.

¶7 HSBS retained Dr. Righetti as a medical causation expert. Dr. Righetti opined that Reese suffered no permanent injuries from the accident. Dr. Righetti relied, in part, on

3

the reports of the Wellcare Panel and Dr. Stratford. The contents of Dr. Stratford's report was referenced and quoted throughout Dr. Righetti's report.

¶8 Several months before trial, Reese filed a motion in limine seeking to exclude (1) evidence that some of her medical expenses had been paid by insurance carriers; (2) the Wellcare Panel report; (3) Dr. Stratford's report; (4) Wallette's reports; and (5) Barrett's report. With regard to the reports, Reese argued that unless the authors were called to testify at trial, the reports lacked foundation and were inadmissible hearsay. HSBS did not oppose Reese's motion with respect to evidence that insurance carriers paid some of her medical expenses, but did oppose Reese's motion with respect to the reports. HSBS argued that it was entitled to cross-examine Arrington on the reports because she had reviewed them prior to preparing her report, and had relied upon them in forming her opinion. The District Court granted Reese's motion with respect to evidence that insurance carriers paid some of her medical expenses. Regarding the reports, the court denied the motion, but stated "either the parties stipulate to the foundation of exhibits before trial or a foundation must be laid for each exhibit before it can be introduced into evidence" and that "[a] ruling on whether a foundation has been laid for the documents Plaintiff seeks to exclude would be premature . . . ."

¶9 Reese was unclear about the effect of the order, so the District Court received further argument on the issue. Reese stated her concern was that HSBS would introduce the opinions of the Wellcare Panel, Dr. Stratford, Wallette, and Barrett through its cross-examination of Arrington, instead of calling the authors to testify to their opinions and be subject to cross-examination themselves. Reese argued that HSBS could not use

4

Arrington as a conduit for other experts' *testimony* without violating the rules against hearsay, and that admitting their *reports* without the authors' testimony would violate the rules against hearsay and authentication.

¶10 HSBS countered that Arrington had acknowledged that she reviewed and relied upon the reports in formulating her own opinion, and that HSBS had a right to cross-examine her on the basis for her opinion. When the District Court asked HSBS whether it was attempting to admit the reports as exhibits, or merely cross-examine Arrington in regard to the reports, HSBS replied that, depending on the testimony, it might seek to admit the reports.

¶11 The District Court again denied Reese's motion in limine, holding that Arrington acknowledged reviewing and relying upon the reports in preparing her opinion, and that HSBS had a right to cross-examine Arrington about the basis of her opinion. The District Court did not specify whether HSBS's use of the reports was limited to cross-examining Arrington on the basis for her opinion, or whether HSBS could also introduce the reports themselves as exhibits.

¶12 HSBS filed a motion in limine to preclude Reese from introducing the original amount charged by her medical providers, $107,970.38, as evidence of the reasonable value of her medical expenses. HSBS argued that the amount the medical providers actually accepted as payment, $92,486.16, was the proper measure of the medical expenses. The District Court granted the motion, allowing Reese to introduce the amount of $92,486.16 as evidence of the reasonable value of her medical expenses.

¶13 At trial, in view of the District Court's ruling that HSBS could cross-examine Arrington on the reports, Reese questioned Arrington about the involvement of the Wellcare Panel, Dr. Stratford, Wallette, and Barrett. Arrington testified generally about Barrett's job as the case manager and what that entailed. Similarly, Arrington testified generally about Wallette's job as a vocational rehabilitation expert and the job analysis he performed for Reese's Workers' Compensation claim. Then, Arrington briefly testified regarding the findings of the Wellcare Panel and Dr. Stratford, stating that "they felt that she would be able to continue to do sales work" and "the doctors themselves had said that she could continue to work in that job."

¶14 During cross-examination, HSBS directed Arrington to follow along as HSBS's counsel read aloud the contents of Wallette's reports, stopping occasionally to ask Arrington to confirm that HSBS was reading the reports correctly. HSBS questioned Arrington on the Wellcare Panel's report, asking Arrington several times to confirm that the Wellcare Panel's report concluded Reese could return to her job at Montana Coffee Traders. HSBS asked Arrington to confirm that Barrett had agreed with the Wellcare Panel's report, and that Barrett's report stated that two other doctors who had seen Reese, Dr. Burns and Dr. Ericksen, likewise agreed with the Wellcare Panel's report. HSBS did not specifically cross-examine Arrington concerning Dr. Stratford's report. Near the end of the trial, HSBS moved for admission of Barrett's report, Wallette's reports, and the Wellcare Panel's report. Reese stipulated to the admission of Barrett's and Wallette's reports, and the Wellcare Panel report was admitted over Reese's objection. Dr. Stratford's report was not admitted, although the report of HSBS's expert,

6

Dr. Righetti, which was later admitted, contained numerous references and quotations to Dr. Stratford's report.

¶15 The videotaped deposition of Dr. DuMontier, who was one of Reese's treating physicians, was played for the jury. In his final report, Dr. DuMontier opined that a permanent injury to Reese was caused by the accident. Reese's expert disclosure provided that Dr. DuMontier would testify consistent with his final report. Sometime after Reese disclosed this, Reese provided Dr. DuMontier with additional medical records that pre-dated the accident. Then, during the deposition, Reese questioned Dr. DuMontier on the additional medical records. Dr. DuMontier testified his opinion remained unchanged after reviewing the additional pre-accident medical records, stating "My assessment is as I presented in [his final report]." HSBS objected to the testimony concerning the additional medical records on the basis it was undisclosed expert opinion. At trial, HSBS renewed the objection and asked that the portion of the video deposition in which Dr. DuMontier addressed the additional medical records be stricken. The District Court sustained HSBS's objection.

¶16 The jury returned a verdict for Reese for $59,500. Reese moved for a new trial, arguing, among other things, that the District Court had abused its discretion (1) in denying her motion in limine with regard to the Wellcare Panel's report; (2) granting HSBS's motion in limine precluding evidence of the amount charged by Reese's medical providers; and (3) striking portions of Dr. DuMontier's videotaped deposition as undisclosed expert testimony. Reese's motion was deemed denied by the District Court. Reese appeals.

## STANDARD OF REVIEW

¶17 The standard of review of a trial court's denial of a motion for a new trial "depends on the basis of the motion." *Fish v. Harris*, 2008 MT 302, ¶ 8, 345 Mont. 527, 192 P.3d 238. Regarding a district court's evidentiary rulings, including rulings on the admissibility of expert testimony, we review for abuse of discretion. *Beehler v. Eastern Radiological Associates, P.C.*, 2012 MT 260, ¶ 17, 367 Mont. 21, 289 P.3d 131.

## DISCUSSION

¶18 *1. Did the District Court abuse its discretion when it admitted into evidence the opinions and reports of doctors that did not testify at trial?*

¶19 Reese argues HSBS was allowed to put several expert opinions into the record without calling those experts to testify. HSBS responds that it properly exercised its right to cross-examine Arrington on the underlying facts and data she relied on in forming her opinion. We agree with Reese.

¶20 Montana Rule of Evidence 705 governs cross examination of experts. It provides:

> The expert may testify in terms of opinion or inference and give reasons therefor without prior disclosure of the underlying facts or data, unless the court requires otherwise. The expert may in any event be required to disclose the underlying facts or data on cross-examination.

¶21 Rule 705 allows the cross-examiner to "determine the underlying facts on which the expert bases [her] opinion and expose the weaknesses if any of the underlying facts for the consideration of the jury." *Jim's Excavating Serv. v. HKM Assocs.*, 265 Mont. 494, 511, 878 P.2d 248, 257 (1994). We have repeatedly stated the right to cross-examine an opposing expert regarding the basis of that expert's opinion is "the

shield to guard against unwarranted opinions," and is "essential" to the "discovery of truth." *Clark v. Bell*, 2009 MT 390, ¶ 22, 353 Mont. 331, 220 P.3d 650 (citations omitted). District courts enjoy wide latitude when determining the admissibility of expert testimony. *Lynch v. Reed*, 284 Mont. 321, 334, 944 P.2d 218, 226 (1997).

¶22 However, neither Rule 705 nor a district court's discretion is without limits. Cross-examination must be limited to the "underlying facts or data" relied upon by the expert, and such data is not admitted as independent substantive evidence. Rather, the data is "admitted for the limited and independent purpose of enabling the jury to scrutinize the expert's reasoning." *U.S. v. Wright*, 783 F.2d 1091, 1100 (D.C. Cir. 1986). Thus, generally, the cross-examination of an expert does not implicate the rule against hearsay because the underlying facts and data are not offered to prove the truth of the matter asserted. Mont. R. Evid. 801(c); *see also Wright*, 783 F.2d at 1100-01. Problems can arise, however, when counsel, under the guise of impeachment, use Rule 705 to introduce substantive evidence. Such evidence bears the hallmark of unreliability because it is not subject to cross-examination. *See Weber v. BNSF Ry. Co.*, 2011 MT 223, ¶¶ 38-39, 362 Mont. 53, 261 P.3d 984 (noting, in discussion of Rule 703, that an expert "may not simply transmit the out-of-court statements or opinions of others . . . ."); *Polythane Sys. v. Marina Ventures Int'l, Ltd.*, 993 F.2d 1201, 1208 (5th Cir. 1993) ("[T]o admit the hearsay opinion of an expert not subject to cross-examination goes against the natural reticence of courts to permit expert opinion unless the expert has been qualified before the jury to render an opinion.") (citation omitted).

¶23    We initially note that only the Wellcare Panel report concerns us here. Dr. Stratford's report was not admitted into evidence. Dr. Righetti's report, despite containing numerous quotations and references to Dr. Stratford's report, Wallette's reports, and Barrett's report, were all admitted on stipulation.

¶24    The District Court was correct to deny Reese's motion in limine with regard to cross examination about the reports because they were "underlying facts and data" for Arrington's opinion for which HSBS had a right to inquire. *Clark*, ¶ 22. Arrington admitted that she relied on the reports in forming her opinion. However, while it is questionable whether the extensive reading from the reports stayed within the contours of Rule 705, it is undisputable that the Wellcare Panel's report changed from impeachment evidence to substantive evidence when it was admitted into evidence. As substantive evidence, the admission of the report violated a number of evidence rules designed to ensure that only trustworthy and reliable evidence is admitted. *See* Mont. R. Evid. 702 (qualification as an expert a prerequisite to offering expert opinion); Mont. R. Evid. 705 (right to cross-examination expert opinion); Mont. R. Evid. 802 (hearsay); Mont. R. Evid. 901 (requirement of authentication). In essence, HSBS was able to submit the out-of-court opinions and report of three doctors not qualified, not subject to cross-examination, and without foundation. Thus, the District Court abused its discretion by admitting the report into evidence.

¶25    We will not reverse a judgment based on an erroneous evidentiary ruling unless a substantial right of the party is affected. Mont. R. Evid. 103. A substantial right of the party is affected when the erroneously admitted evidence is of such character to have

10

affected the result. *In re A.N.*, 2000 MT 35, ¶ 55, 298 Mont. 237, 995 P.2d 427. Here, we conclude that the admission of the Wellcare Panel's opinions and report as substantive evidence affected the outcome of the trial. The doctors' opinions were contrary to Reese's theory of the case. Although HSBS's expert witness, Dr. Righetti, came to similar conclusions, his opinion and credibility were subject to attack on cross-examination, while the three doctors of the panel were not. Their opinions were taken by the jury to the jury room for deliberation. We conclude that the erroneous admission of the Wellcare Panel's opinions and report affected the outcome of the trial and affected Reese's substantial rights.

¶26 Although we reverse and remand on the above issue, we deem it necessary to address two other alleged trial errors.

¶27 *2. Did the District Court abuse its discretion when it excluded evidence of the original charges billed by medical providers?*

¶28 After Reese filed her opening brief, we decided *Meek v. Mont. Eighth Jud. Dist. Ct.*, 2015 MT 130, 379 Mont. 150, 349 P.3d 493. There, we held evidence of the original charges for medical services is admissible to establish the reasonable value of the medical services. *Meek*, ¶ 22. On remand, Reese should be allowed to introduce the original charges billed by her medical provider as evidence of her reasonable damages. HSBS, of course, is free to contest the reasonableness of those bills as a measure of damages. *Meek*, ¶ 22.

11

¶29 *3. Did the District Court abuse its discretion when it struck portions of a video deposition as previously undisclosed expert opinion?*

¶30 Reese argues the District Court abused its discretion when it struck portions of Dr. DuMontier's video deposition as undisclosed expert opinion because Dr. DuMontier's causation opinion remained unchanged by the medical records he reviewed post-expert disclosure but pre-deposition. HSBS answers that it was caught off guard because it had no notice Dr. DuMontier would give an opinion that included a review of the medical records in question, and instead had been prepared to cross-examine Dr. DuMontier's opinion with the understanding Dr. DuMontier had not reviewed those records.

¶31 Montana Rule of Civil Procedure 26(b)(4)(A)(i) addresses expert witnesses:

> A party may through interrogatories require any other party to identify each person whom the other party expects to call as an expert witness at trial, to state the subject matter on which the expert is expected to testify, and to state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion.

¶32 The underlying policies requiring expert disclosures are to eliminate surprise and to promote effective cross-examination of expert witnesses. *Hawkins v. Harney*, 2003 MT 58, ¶ 26, 314 Mont. 384, 66 P.3d 305. We analyze the adequacy of expert disclosures on a case-by-case basis in light of the underlying policies of M. R. Civ. P. 26. *Hawkins*, ¶ 24 (citing *Scott v. E.I. Dupont De Nemours & Co.*, 240 Mont. 282, 783 P.2d 938 (1989) and *Montana Power Co. v. Wax*, 244 Mont. 108, 796 P.2d 565 (1990)).

¶33 Although HSBS's objection was seemingly hypertechnical, the District Court was within its discretion to exclude the testimony. Dr. DuMontier's opinion may have

12

remained unchanged from reviewing the additional medical records, but his opinion without review of all the medical records was ostensibly weaker than his opinion with review of all the medical records. HSBS apparently planned to exploit that weakness during its cross-examination, and the District Court reasoned HSBS was unfairly surprised when it could not do so. Given the wide latitude district courts enjoy on evidentiary issues, we conclude that it was within the District Court's discretion to exclude the testimony. Although not dispositive in the analysis, it bears noting that only portions of his testimony were excluded, and Dr. DuMontier's causation opinion was stated elsewhere in the deposition and in the admission of his report.

¶34 Affirmed in part, reversed in part, and remanded for a new trial.


/S/ JIM RICE

We concur:

/S/ MIKE McGRATH
/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER
/S/ MICHAEL E WHEAT

13