FILED

02/13/2018

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 16-0579

DA 16-0579

IN THE SUPREME COURT OF THE STATE OF MONTANA

2018 MT 22N

IN THE MATTER OF:

C.G.,

Respondent and Appellant.

APPEAL FROM:     District Court of the Eleventh Judicial District,
In and For the County of Flathead, Cause No. DI 16-39A
Honorable Amy Eddy, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Chad Wright, Appellate Defender, Moses Okeyo, Assistant Appellate
Defender, Helena, Montana

For Appellee:

Timothy C. Fox, Montana Attorney General, Ryan Aikin, Assistant
Attorney General, Helena, Montana

Ed Corrigan, Flathead County Attorney, Caitlin Overland, Deputy County
Attorney, Kalispell, Montana

Submitted on Briefs:   January 17, 2018

Decided:   February 13, 2018

Filed:

_____
Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1     Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2     C.G. appeals from an order of the Eleventh Judicial District Court, Flathead County, involuntarily committing her to a community treatment facility for up to five days. We affirm.

¶3     C.G.'s commitment followed an incident in July 2016, where C.G. swam approximately 100 yards out into Lake McDonald in Glacier National Park and refused to return to shore. At the time, C.G., age 24, lived in a recreational vehicle with Birch Bergeson (Bergeson), her boyfriend, and her three young children, ages five, one and one-half, and four months. Law enforcement in a boat rescued C.G. from the water. C.G. appeared to be disoriented and struggled to provide her children's names when asked. Law enforcement transported C.G. to Pathways Behavioral Health Center (Pathways).

¶4     Subsequently, the State filed a petition seeking C.G.'s involuntary commitment to the Montana State Hospital (MSH) for a period not to exceed three months. The State's petition alleged C.G. suffers from a mental disorder and requires commitment. Five days after the State filed its petition, the District Court held an adjudicatory hearing. At the hearing, several witnesses testified. Bergeson testified on C.G.'s behalf. Bergeson testified that C.G. is a great mother, but is "stressed" and suffered a "meltdown" when she swam

out into the lake. Bergeson implied that C.G. may be suffering from postpartum depression. C.G. testified that she went swimming in the lake simply because she was hot and that law enforcement did not need to rescue her. C.G. also testified that she suffers from post-traumatic stress disorder and being confined at Pathways away from her children is "torture."

¶5 Dr. Todd Shumard (Shumard), a psychiatrist at Pathways, testified that C.G. has schizoaffective disorder and is labile, or emotionally unstable. Shumard reviewed C.G.'s mental health history and saw that she was admitted to Pathways as a teenager because of mood instability and delusional, magical thinking. Shumard testified about C.G.'s behavior during her current admission at Pathways. According to Shumard, C.G. was reluctant to eat or bathe, was threatening toward others, got too close to others, and grabbed her therapist's face. Shumard testified that C.G. was taking one type of medication, but not the other recommended types, and her mental health was improving. At the time of the hearing, Shumard testified that he did not believe C.G. "could adequately manage herself without some outside help." Shumard recognized C.G. struggled at Pathways because she was separated from her children, but expressed concern about her safety and ability to care for herself if she were released. Shumard testified that C.G. would benefit from a few more days away from her children, but that a lengthy commitment to MSH would likely exacerbate her mental health issues.

¶6 Following the adjudicatory hearing, the District Court concluded C.G., because of her schizoaffective disorder, could not provide for her own health and safety and was a threat to herself and others. The District Court determined that placing C.G. in a

3

community environment was the least restrictive option. The District Court ordered C.G.'s commitment to Pathways for no more than five days.

¶7    On appeal, C.G. argues the District Court erred by concluding, under § 53-21-126(1)(a), (c), MCA, that she was unable to provide for her own basic needs and was in imminent threat of injuring herself or others. If, during its consideration of a petition for involuntary commitment, a court determines that the respondent is suffering from a mental disorder, "the court shall then determine whether the respondent requires commitment." Section 53-21-126(1), MCA. In making its determination, the court shall consider:

> (a)    whether the respondent, because of a mental disorder, is substantially unable to provide for the respondent's own basic needs of food, clothing, shelter, health, or safety;
>
> .   .   .
>
> (c)    whether, because of a mental disorder, there is an imminent threat of injury to the respondent or to others because of the respondent's acts or omissions; . . . .

Section 53-21-126(1)(a), (c), MCA. Further, "Imminent threat of self-inflicted injury or injury to others must be proved by overt acts or omissions, sufficiently recent in time as to be material and relevant as to the respondent's present condition." Section 53-21-126(2), MCA.

¶8    Here, evidence established that C.G. swam into a lake and refused to return, which resulted in her rescue and initial placement at Pathways. The District Court concluded C.G. swimming a long distance into a lake and refusing to return represented her intention to cause herself injury. C.G.'s boyfriend testified that by "swimming into McDonald Lake,

4

and, you know, being kind of nonresponsive," C.G. had a "little bit of a meltdown." Evidence of this incident demonstrated the recent "overt act" contemplated by § 53-21-126(2), MCA, and attributable to C.G.'s mental disorder. Shumard testified that, based on her behavior at Pathways, C.G. could not provide for her own basic needs. This evidence supports the District Court's conclusions that C.G. could not provide for her own health and safety and that there was an imminent threat of injury requiring her commitment. The District Court did not err in involuntarily committing C.G. under § 53-21-126(1)(a), (c), MCA.

¶9      Additionally, C.G. argues the District Court relied on inadmissible hearsay in making its determinations. Specifically, C.G. argues Shumard's testimony was not based on personal knowledge, but a review of her admission records. Evidence inadmissible for one purpose may be admissible for another. *In re C.K.*, 2017 MT 69, ¶ 18, 387 Mont. 127, 391 P.3d 735 (citing M. R. Evid. 105). If information is reasonably relied upon by experts in the expert's field, "an expert may base his or her opinion or inference on otherwise inadmissible evidence or facts not in evidence." *In re C.K.*, ¶ 18 (citing M. R. Evid. 703). The evidence relied upon by an expert in forming his or her opinion is admitted for the limited purpose of "aid[ing] the finder of fact in assessing the credibility and reliability of the expert's opinion," not as "substantive evidence of the matter asserted therein." *In re C.K.*, ¶ 21. Here, Shumard's opinion that C.G. could not adequately care for herself without help was based in part on his review of her admission records. We conclude that the District Court appropriately considered Shumard's opinion for the limited purpose of determining whether C.G. required commitment.

¶10 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. This appeal presents no constitutional issues, no issues of first impression, and does not establish new precedent or modify existing precedent.

¶11 Affirmed.

/S/ LAURIE McKINNON

We Concur:

/S/ JIM RICE
/S/ DIRK M. SANDEFUR
/S/ BETH BAKER
/S/ INGRID GUSTAFSON